629 So.2d 1335 (1993)
BURNHAM BROADCASTING COMPANY, a Limited Partnership d/b/a WVUE-TV 8
v.
Timothy D. WILLIAMS, Jr., et al.
No. 93-CA-0409.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
Writ Denied February 25, 1994.
*1336 Dominic J. Gianna, William M. Blackston, Middleberg, Riddle & Gianna, New Orleans, for plaintiff/appellee.
Ronald L. Wilson, New Orleans, for defendants/appellants.
Before BYRNES, WARD and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendants Timothy D. Williams, Donnie Williams, and The Christian Church of New Orleans Investigating and Interrogating Body (TCCNOIIB) appeal a trial court judgment granting a preliminary injunction prohibiting them from threatening plaintiff, Burnham Broadcasting Co., d/b/a WVUE TV 8, or any of its advertisers, either directly or indirectly. We affirm.

A. Facts:

According to the defendants, TCCNOIIB was established by the Christian Church of New Orleans, a non-denominational church, "to investigate and deal with the numerous social issues of today, particularly those of racism and injustice."
The defendants admit that TCCNOIIB threatened WVUE with protests and picketing of advertisers unless WVUE met their demands for free television coverage of their activities which they claim are designed to create public awareness of the problems of racism in the City of New Orleans. When WVUE failed to meet their demands to their satisfaction, the defendants conducted boycotts, some of which caused the advertisers targeted to remove their advertising from the television station. The defendants also admit that WVUE officials met with them on various occasions and that they provided coverage of some events, but insist that WVUE continues in a policy of reporting the news in a partial manner, particularly as it pertains to the black community. Numerous communications between the parties, by way of meetings, telephone conversations, and letters, are documented in the record of this case.
The dispute, the defendants say, stems "from the failure and/or refusal of WVUE to *1337 allow TCCNOIIB, through Pastor Williams, to appear on its Newsmaker program to discuss social issues which WVUE, according to Pastor Williams, had covered inadequately in a[n] earlier program." The defendants justify their actions by saying that Pastor Williams is "not requesting time that [is] set aside for paid advertisements; he was merely asking to be included on a program on which WVUE highlights events of concern to viewers within its viewing area."
Burnham Broadcasting claims that it took numerous actions in an attempt to address the concerns expressed by the defendants. However, despite these efforts to appease the defendants, the demands increased, until finally they reached the level of coercion, threats, and extortion, the plaintiff claims. For example, Burnham Broadcasting claims that the defendants demanded coverage of specific events by certain WVUE personnel. Additionally, the plaintiff contends, Pastor Williams sought additional free air time for himself, then sought to control which portions of the message the station aired. When the demands became unreasonable, Burnham Broadcasting claims, the instant suit was filed. In its petition, WVUE alleged, among other things, that TCCNOIIB were "attempting to force WVUE to abrogate its role as a responsible member of the news media to provide balanced news coverage to airworthy events."
Burnham Broadcasting filed a petition for injunctive relief, claiming that TCCNOIIB's activities could be enjoined because the defendants' accusations were illegal, unjust, and defamatory, and their activities were threatening. Plaintiff claimed that it would suffer irreparable injury unless an injunction was issued.
After hearing the case on affidavits and verified pleadings, the trial judge issued a preliminary injunction, which states as follows:
YOU ARE COMMANDED, ENJOINTED [sic], PROHIBITED AND RESTRAINED FROM, in the name of the State of Louisiana and of the Civil District Court for the Parish of Orleans,
(1) threatening, whether directly or indirectly, the plaintiff, or plaintiff's agents, employees or customers, with picketing or public displays of protest if Timothy D. Williams, Jr., Jerry Davis, Jr. and/or The Christian Church of New Orleans Investigating and Interrogating Body (or his, their or its agent(s)) is/are not granted free air time on the plaintiff's television station (WVUE-TV 8), or news coverage on the plaintiff's television station (WVUE-TV 8);
(2) seeking or extorting from the plaintiff, its agent(s), employee(s) or customer(s) something of value for not picketing or publicly protesting;
(3) picketing, threatening to picket, protesting or threatening, whether directly or indirectly, any customer of the plaintiff to entice or cause such customer of the plaintiff to cease conducting business with the plaintiff, or demanding or extorting anything of value from such customer in lieu of picketing, threatening to picket or publicly protesting.
In issuing the injunction in this case, the trial judge found in his reasons for judgment that the defendants' conduct constituted extortion, and that the conduct was therefore not subject to First Amendment protection. He found that the plaintiffs had established a prima facie case under both the state and federal extortion statutes and that the defendants' activities were directed at deriving "income," which he defined as "a gain or recurrent benefit usually measured in money that derives from capital or labor." The trial judge recognized the defendants' constitutional right to express their opinions regarding racism and paternalism, but found that they "crossed the line of constitutionally protected First Amendment free speech" when they sought "something of value from a private entity such as WVUE."

B. Standard for granting preliminary injunction

La.C.C.P. art. 3601, relative to the grounds for issuance of an injunction, provides, in pertinent part, as follows:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in *1338 other cases specifically provided by law....
During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited....
In order to prevail at a hearing for preliminary injunction, the moving party must show two things: (1) that the injury, loss or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979); Franz v. Cormier, 579 So.2d 1201 (La.App. 5th Cir. 1991). Only a prima facie showing is required; therefore, the petitioner is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. Id. Since a preliminary injunction is an interlocutory procedural device designed to preserve the status as it exists between the parties pending trial on the merits, a trial judge has great discretion to grant or deny the relief requested. Id.
In filing its appeal in the instant case, the defendants do not allege that Burnham Broadcasting failed to prove that it would suffer irreparable injury if the injunction was not issued. Rather, TCCNOIIB arguments address the second and third prongs of the above test for determining whether a preliminary injunction is appropriatei.e. whether Burnham Broadcasting is entitled to the relief requested and whether Burnham Broadcasting would be likely to prevail on the merits of the case. Specifically, TCCNOIIB makes the following two arguments: (1) that the preliminary injunction violates their rights under the First Amendment of the United States Constitution, and (2) that the trial court's finding that their activities violated state and federal extortion laws was in error. In keeping with the principle that constitutional issues should be avoided unless the resolution of such issues is necessary to the disposition of the case, In re Snyder, 472 U.S. 634, 642, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985), we will consider the second issue first.

C. Extortion

In concluding that Burnham Broadcasting was entitled to the relief requested and that it was likely to prevail on the merits, the trial judge found that the plaintiffs had presented a prima facie case that the defendants' activities violated federal extortion laws, specifically 18 U.S.C. 1962, commonly called the RICO statute. The RICO statute provides, in pertinent part, as follows:
(b) It shall be unlawful for any person through a pattern of racketeering or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engage in, or the activities of which affect, interstate or foreign commerce.
(c) It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
Although the parties disagree concerning which the of above subsections of RICO the trial court applied to this case, they agree that the elements of cause of action under either subsection are the same. Generally, to establish a prima facie case, the plaintiff must show the following:
(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that he participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts.
United States v. Kopituk, 690 F.2d 1289, 1323 (11th Cir.1982), cert. denied Turner v. United States, 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300, Williams v. United States, 461 U.S. 928, 103 S.Ct. 2090, 77 L.Ed.2d 300, Kopituk v. United States, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983).
*1339 The defendants claim that the plaintiff failed to establish a prima facie case under this law for two reasons: (1) because the plaintiff failed to shown the defendants' association with an "enterprise," which they define as "an organized profit-seeking venture," and (2) because the plaintiff failed to show the existence of a "pattern of racketeering activities."

1. Existence of an "enterprise"

On the first issue, the parties' principle disagreement is centered on whether the RICO statute requires that an "enterprise" have a profit-seeking motive. The defendants claim that TCCNOIIB is not an organized profit-seeking venture, and that they therefore may not be enjoined from their activities under RICO.
In response, Burnham Broadcasting cites numerous federal cases, first to show that the circuit courts are split on the issue of whether the plaintiff in a RICO suit must indeed show the existence of an "economic enterprise" as opposed to a "non-economic enterprise," and second to show that even those circuits which require a showing of a profit-seeking motive find that requirement satisfied when the plaintiffs establish either that the enterprise itself is profit motivated or that the racketeering acts are profit motivated. Burnham Broadcasting claims that the better interpretation of the statute, and the one most likely to be adopted by both the fifth circuit and the United States Supreme Court, neither of which has addressed this issue squarely, would not require that Burnham Broadcasting prove that defendants' actions were profit motivated. However, even if a showing of profit motive was required, Burnham Broadcasting argues, it did meet its burden of showing that the defendants' actions were indeed intended to obtain an economic advantage, i.e. free valuable air time.
18 U.S.C. 1961(4) defines an "enterprise" to "include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. In order to show an "association-in-fact," a plaintiff must show "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); Manax v. McNamara, 842 F.2d 808, 811 (5th Cir.1988). The caselaw interpreting that provision generally requires a showing that an association-in-fact have some purpose beyond the conduct complained about in the case. See, e.g. Manax, 842 F.2d 808, in which the court held that two individuals joined together to commit one discrete criminal act do not constitute an association-in-fact. Id. at 811, citing Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 427 (5th Cir.1987).
In the instant case, the plaintiffs presented sufficient evidence to establish a prima facie case that the defendants are indeed an association-in-fact. TCCNOIIB is an organization committed to the pursuit of various social goals, principally the removal of racism and paternalism. In pursuit of those goals, the group has undertaken numerous projects, including the activities against Burnham Broadcasting complained about in the instant case. Thus, Burnham Broadcasting showed "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583, 101 S.Ct. at 2528.
The more important problem in determining whether the trial judge correctly found existence of an "enterprise" centers around the "profit motive" issue. The trial judge found specifically that a profit motive was established since TCCNOIIB was seeking to gain "income," which the trial judge defined as "a gain or recurrent benefit usually measured in money that derives from capital or labor, from Burnham Broadcasting. In his reasons for judgment, the trial judge says that the "benefit" sought by the defendants, i.e. free air time, falls within that definition because they seek a recurrent benefit.
We agree with the trial court's conclusion that the benefit sought by TCCNOIIB, free air time, is sufficient to qualify as a profit-seeking motive for purposes of a RICO violation. Thus, it is unnecessary for this court to *1340 determine whether a court must find a profit-seeking motive before it can find a RICO violation. Only if no profit-seeking motive was present in this case would determination of whether such a motive is a prerequisite to a finding that an enterprise existed be important. Thus, we agree with the trial court's conclusion TCCNOIIB was an enterprise for purposes of a RICO violation.

2. Existence of a "pattern of racketeering activity"

On the second issue, the defendants claim that Burnham Broadcasting failed to make a prima facie showing the defendants engaged in a "pattern of racketeering activities," as required for a RICO violation. 18 U.S.C. 1961(5) provides, in pertinent part, that a "`pattern of racketeering activity' requires at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." Further, 18 U.S.C. 1961(1)(A) defines "racketeering activity" to include the following predicate offenses: "(A) any act or threat involving ... extortion ..., which is chargeable under State law and punishable by imprisonment for more than one year," and "(B) any act which is indictable under ... section 1951 (relating to interference with commerce, robbery, or extortion)." The trial judge found that this element was satisfied by the showing that the defendants engaged in picketing WVUE and its customers on various occasions, as well as the showing that threatening letters were mailed to the plaintiff.
The defendants claim that the trial court erred in finding that picketing qualified as racketeering activity. The defendants claim that they did not engage in a "pattern of racketeering activities" because they did not "extort money from anyone, trespass on anyone's property, harass or strike anyone, or commit any crimes of violence," and seeking to distinguish its activities from the activities in the cases cited by the trial judge in support of his decision. The defendants claim that "racketeering activities" must consist of economic predicate acts, and that a request for free air time is not a predicate act.
Not so, says Burnham Broadcasting, which claims that any act of extortion under federal or state law is a predicate offense under the RICO statute. Burnham Broadcasting claims that the trial court found that TCCNOIIB's activities qualified as extortion under both federal and state law.
Because we find that TCCNOIIB's activities did indeed constitute extortion under federal law, we pretermit any discussion of whether the activities also qualified as extortion under state law. The federal extortion law, codified at 18 U.S.C. 1951, is commonly referred to as "the Hobbs Act."
That provision defines "extortion" as follows:
the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right.
Since "extortion" includes activities which tend to exploit the fear of the victim, inducing a party to give up any property right because of fear of economic loss qualifies as extortion. See United States v. Duhon, 565 F.2d 345, 350-51 (5th Cir.), cert. denied Duhon v. United States, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); United States v. Tropiano, 418 F.2d 1069, 1075-76 (2d Cir. 1969), cert. denied Grasso v. United States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530, Tropiano v. United States, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970). The term "property," as used in the above definition, "includes, in a broad sense, any valuable right considered as a source or element of wealth." Tropiano, 418 F.2d at 1075. Further, the "right to pursue a business including the solicitation of customers necessary to the conduct of such business has long been recognized as a property right." Id. at 1076. See also Northeast Women's Center, Inc. v. McMonagle, 868 F.2d 1342, 1350 (3d Cir.) cert. denied McMonagle v. Northeast Women's Center, Inc., 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989).
In the instant case, Burnham Broadcasting showed at least two acts by the defendants designed to coerce Burnham Broadcasting into giving up a valuable property right, i.e. free air time. Burnham Broadcasting showed that the defendants conducted demonstrations and pickets both on or near its *1341 property and on or near the property of its advertisers. Additionally, Burnham Broadcasting introduced letters from the defendants designed to achieve the same results. Thus, Burnham Broadcasting made a prima facie showing of a "pattern of racketeering activities" on the part of the defendant.

D. First Amendment

Because we have concluded that the preliminary injunction was properly admitted under the federal RICO statute, we must now consider whether the preliminary injunction was nevertheless improper under the First Amendment to the United States Constitution.
The defendants claim that the Constitution protects their activities because the right to engage in nonviolent boycotts and protests is protected by the First Amendment, making the injunction improper. They claim that they were engaged in a secondary boycott and protest designed to increase awareness of "a matter of great social concern, to wit: [Burnham Broadcasting's] unfair and biased news coverage of events and issues relevant to the black community." The defendants again claim that the injunction was improper because it was not designed to advance any economic interests, but social concerns.
Although the defendants correctly cite NAACP v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) and Machesky v. Bizzell, 414 F.2d 283 (5th Cir.1969) in support of their proposition that certain types of picketing and demonstrations designed to eliminate segregation and discrimination are protected by the First Amendment, the activities conducted by the defendants in the instant case do not fall into the same category as the activities in the earlier case for one major reasonthe activities conducted by the defendants in this case were part and parcel of a criminal act, extortion. First Amendment protection does not protect criminal activity, including extortion. See United States v. Quinn, 514 F.2d 1250 (5th Cir.1975), cert. denied Quinn v. United States, 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976), in which the court found that unlawful threats to picket a commercial establishment to coerce the owner into making a religious contribution were not protected by the First Amendment. Thus, the preliminary injunction issued in the instant case is not improper under the First Amendment to the United States Constitution.

E. Writ application

After the issuance of the preliminary injunction, while this case was on appeal, the trial court issued a judgment holding the defendants in contempt of court for violating the preliminary injunction. The defendants sought supervisory writs in this court in application # 93-C-1113, which we consolidated with this appeal; we also stayed execution of the contempt judgment until resolution of this appeal. We now deny any relief in the writ application and lift the order staying the execution of the contempt judgment.

F. Conclusion

Accordingly, the trial court judgment issuing the preliminary injunction against the defendants is affirmed. Additionally, all relief is denied in supervisory writ application # 93-C-1113, and the order staying execution of the contempt judgment is lifted.
AFFIRMED; RELIEF DENIED IN WRIT APPLICATION; STAY LIFTED.