664 So.2d 1216 (1995)
STATE of Louisiana THROUGH the LOUISIANA STATE BOARD OF EXAMINERS OF PSYCHOLOGISTS OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES
v.
Boyd J. ATTERBERRY.
No. 95 CA 0391.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*1218 Lloyd L. Lunceford, Baton Rouge, for Plaintiff/Appellee, State of Louisiana, et al.
Robert B. Butler, III, Houma, for Defendant/Appellant, Boyd J. Atterberry.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a preliminary injunction in an action to enjoin the administration and use of certain tests by a licensed professional counselor.

FACTS
Boyd J. Atterberry is a licensed professional counselor doing business as The Helping Place in Houma, Louisiana. Atterberry also holds a masters degree in clinical psychology. In the course of his counseling practice, Atterberry has used various tests, including the Wechsler Intelligence Scale for ChildrenRevised, the Bender Visual Motor Gestalt Test, the Woodcock-Johnson Psycho-Educational Battery Test of Achievement, the Gordon Diagnostic System, the Achenbach Child Behavior Checklist, Incomplete Sentences Blank, the Kinetic Family Drawing Test, and the Draw-A-Person Test, for the purpose of counseling mental disorders such as autism, attention deficit disorder, and mental retardation.[2]
On March 22, 1994, pursuant to various reports received by the State of Louisiana, through the Louisiana State Board of Examiners of the Department of Health and Human Services (the Board), the Board sent written demand to Atterberry, advising him that he was engaged in the practice of psychology without a license and that he should cease all independent psychological testing activities.
On April 4, 1994, Atterberry responded to the Board's letter of March 22, 1994, advising the Board that he was not practicing psychology and that all his activities fell within the ambit of his duties as a licensed professional counselor.
On June 29, 1994, the Board filed the instant suit for injunctive relief, seeking to enjoin Atterberry from using various diagnostic tests. The Board alleged that the administration of those tests constitute a prohibited, unlicensed practice of psychology as defined in LSA-R.S. 37:2352(5) in that such practice constitutes unlicensed psychological testing, evaluation, and assessment as set forth in LAC, Title 46, Part LXIII, Chapter 17, Section 1702.
Atterberry answered the Board's petition, admitting that he utilized the various tests on the dates set forth in the Board's petition for the purpose of appraisal and counseling as authorized by LSA-R.S. 37:1103(4)(e) and that he is fully competent to administer the tests given. Atterberry also raised various constitutional issues, including violation of due process, denial of equal protection, and restraint of trade. Atterberry alleged that the phrases "practice of psychology" and "psychological testing, evaluation, and assessment" as defined in LSA-R.S. 37:2352(5) and LAC, Title 46, Part LXIII, Chapter 17, Section 1702 are unconstitutionally vague. Atterberry also alleged that the definition of "psychological testing, evaluation, and assessment" *1219 by the Board was an unconstitutional delegation of legislative power.
After a hearing, the trial judge rendered judgment,[3] issuing a preliminary injunction enjoining Atterberry from administering or using the following tests: the Wechsler Intelligence Scale for ChildrenRevised, the Bender Visual Motor Gestalt Test, the Woodcock-Johnson Psycho-Educational Battery Test of Achievement, the Gordon Diagnostic System, the Achenbach Child Behavior Checklist, Incomplete Sentences Blank, the Kinetic Family Drawing Test, and the Draw-A-Person Test.
From this adverse judgment, Atterberry appeals,[4] assigning the following errors: [5]
1. The Trial Court erred in issuing a preliminary injunction when the plaintiff failed to prove by a preponderance of the evidence the necessary elements for the issuance of a preliminary injunction.
2. The Trial Court erred in issuing a preliminary injunction to defendant enjoining him from administering the tests set forth in said preliminary injunction, but which tests he is authorized to administer as a licensed professional counselor.
3. The Trial Court erred in issuing a preliminary injunction to defendant enjoining him from using the tests set forth in said Preliminary Injunction which tests he is authorized to use as a Licensed Professional Counselor.
4. The Trial Judge erred in failing to find that the statute pursuant to which he issued the preliminary injunction was unconstitutional as violative of due process of law and equal protection of law.
5. The Trial Judge erred in issuing a preliminary injunction in support of an unreasonable, unlawful and illegal restraint of trade.
6. The Trial Judge erred in failing to find that the statute and regulations sought to be enforced are an unconstitutional infringement on the rights of free speech of the defendant.
7. The Trial Judge erred in failing to find that the State Board of Examiners of Psychologists had no authority to issue a regulation defining psychological testing, since if such power was granted to them same would be an unconstitutional delegation of legislative power in violation of Louisiana Constitution, Article 2, Sections 1 and 2.
The Board answered Atterberry's appeal, seeking modification of the trial court's judgment in that it failed to enjoin Atterberry from using, administering, or interpreting any tests, appraisal or measurement instruments, devices, or procedures for the purpose of treatment planning, diagnosis, classification, or description of mental and emotional disorders and disabilities, or disorders of personality or behavior, psychological aspects of physical illness, accident, injury, or disability, or neuropsychological impairment as prohibited by LAC, Title 46, Part LXIII, Chapter 17, Section 1702 C, LSA-R.S. 37:1103(3), and LSA-R.S. 37:1107 E(2). Although the Board assigned this issue as error in its answer, the Board failed to brief the error in its appellate brief.[6]

*1220 INJUNCTIVE RELIEF

Atterberry contends that the trial court erred in granting the Board injunctive relief because the Board failed to establish the requisite elements for issuance of a preliminary injunction.
LSA-C.C.P. art. 3601 provides as follows:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.
Generally, in order to prevail at a hearing for a preliminary injunction, the moving party must satisfy three prerequisites to such relief, namely, (1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable, (2) that he is entitled to the relief sought, and (3) that he will be likely to prevail on the merits of the case. General Motors Acceptance Corporation v. Daniels, 377 So.2d 346, 348 (La.1979); Burnham Broadcasting Company v. Williams, 629 So.2d 1335, 1338 (La. App. 4th Cir.1993), writ denied, 94-0150 (La. 2/25/94); 632 So.2d 770, cert. denied, ___ U.S. ___, 115 S.Ct. 69, 130 L.Ed.2d 25 (1994).
Although irreparable harm is the usual issue in an injunction proceeding, when the plaintiff is alleging that the defendant is acting in direct violation of a prohibitory law, there is no need to prove irreparable harm. Hays v. City of Baton Rouge, 421 So.2d 347, 349 (La.App. 1st Cir.), writ denied, 423 So.2d 1166 (La.1982). See Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1359 (La. 1991). See also Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161, 1168-69 (La.1979). Moreover, the requirement that the moving party show irreparable harm is not required when there is some specific provision of law which otherwise provides such relief. Freeman v. Treen, 442 So.2d 757, 761 (La.App. 1st Cir.1983).
In any event, to be entitled to injunctive relief, only a prima facie showing is required; therefore, the petitioner is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. General Motors Acceptance Corporation v. Daniels, 377 So.2d at 348; Burnham Broadcasting Company v. Williams, 629 So.2d at 1338; Federal National Mortgage Association v. O'Donnell, 446 So.2d 395, 399 (La.App. 5th Cir.1984); Freeman v. Treen, 442 So.2d at 761. Further, a preliminary injunction is an interlocutory procedural device designed to preserve the existing status between the parties pending trial on the merits. Haughton Elevator Division v. State, Division of Administration, 367 So.2d at 1169; Burnham Broadcasting Company v. Williams, 629 So.2d at 1338; Federal National Mortgage Association v. O'Donnell, 446 So.2d at 398.
A trial judge has great discretion to grant or deny the relief requested. Burnham Broadcasting Company v. Williams, 629 So.2d at 1338. His determination should not be disturbed in the absence of manifest abuse of that discretion. Freeman v. Treen, 442 So.2d at 761.
Therefore, we must examine the law relative to the practice of psychology and the facts of the instant case to determine whether the Board made a prima facie showing that it is entitled to injunctive relief and whether the trial judge abused his discretion in granting the preliminary injunction.

UNAUTHORIZED PRACTICE OF PSYCHOLOGY
Atterberry contends that the administration of certain tests for appraisal purposes is not the unauthorized practice of psychology, but that the administration of those tests is specifically within those activities in which a licensed professional counselor may engage.
A licensed professional counselor is authorized to perform mental health counseling in accordance with LSA-R.S. 37:1101 et seq. LSA-R.S. 37:1103(3) defines "[m]ental health counseling services" as:
[T]hose acts and behaviors coming within the practice of mental health counseling as defined in this Chapter. However, nothing in this Chapter shall be construed to authorize any person licensed hereunder to administer or interpret tests in accordance *1221 with the provisions of R.S. 37:2352(5), except as provided by Title 46, Part LXIII, Chapter 17, Section 1702(E) of the Louisiana Administrative Code, or engage in the practice of psychology. (emphasis added.)
The "[p]ractice of mental health counseling" is defined in LSA-R.S. 37:1103(4) as the
[R]endering or offering to individuals, groups, organizations, or the general public by a licensed professional counselor, any service consistent with his professional training as prescribed by R.S. 37:1107(A)(8), and code of ethics/behavior involving the application of principles, methods, or procedures of the mental health counseling profession which include but are not limited to:
(a) "Mental health counseling", which means assisting an individual or group, through the counseling relationship, to develop an understanding of personal problems, to define goals, and to plan actions reflecting his or their interests, abilities, aptitudes, and needs as these are related to personal and social concerns, educational progress, and occupations and careers.
(b) "Consulting", which means interpreting or reporting scientific fact or theory to provide assistance in solving current or potential problems of individuals, groups, or organizations.
(c) "Referral activities", which means the evaluating of data to identify problems and to determine the advisability of referral to other specialists.
(d) "Research activities", which means reporting, designing, conducting, or consulting on research in counseling with human subjects.
(e) "Appraisal", which means the use or administration of tests of language, educational and achievement tests, adaptive behavioral tests, and symptoms screening checklists or instruments, as well as tests of abilities, interests, and aptitudes for the purpose of counseling persons in coping with or adapting to, changing life situations that are due to problems in living.
Clearly, under the language of the law, a licensed professional counselor is expressly authorized to engage in mental health counseling, consulting, referral and research activities, and appraisals, which by definition includes the use or administration of certain kinds of tests for certain purposes. However, a licensed professional counselor is expressly prohibited from engaging in the practice of psychology or administering or interpreting tests as set forth in LSA-R.S. 37:2352(5).
LSA-R.S. 37:2352(5) defines the "[p]ractice of psychology" as:
"Practice of psychology" is defined as the observation, description, evaluation, interpretation, and modification of human behavior, by the application of psychological principles, methods, and procedures, for the purpose of eliminating symptomatic, maladaptive, or undesired behavior, and of improving interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health. The practice of psychology includes but is not limited to psychological testing and evaluation or assessment of personal characteristics such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning; counseling, psychoanalysis, psychotherapy, hypnosis, stress management, biofeedback, behavior analysis and therapy; diagnosis and treatment of mental and emotional disorder or disability, alcoholism and substance abuse, and of the psychological aspects of physical illness, accident, injury, or disability; psychoeducational evaluation, therapy, remediation, and consultation.
LAC, Title 46, Part LXIII, Chapter 17, Section 1702 A, further provides that, except as otherwise provided by law, psychological testing may only be administered and interpreted by:
a person duly licensed as a psychologist by this board under R.S. 37:3251 et seq., or by a person under the direct supervision of a psychologist, provided that such supervision is in compliance with the regulations of this board.
LAC, Title 46, Part LXIII, Chapter 17, Section 1702 C, defines psychological testing, evaluation, or assessment as: *1222 the administration and/or interpretation of measurement instruments, devices, or procedures for the purpose of treatment planning and/or diagnosis, classification or description of mental and emotional disorders and disabilities, disorders of personality or behavior, psychological aspects of physical illness, accident, injury, or disability, and neuropsychological impairment.
Moreover, Section D of LAC, Title 46, Part LXIII, Chapter 17, Section 1702, notes that psychological testing explicitly includes three areas, namely intellectual,[7] personality and emotional,[8] and neuropsychological.[9]
Therefore, although a licensed professional counselor may engage in the administration and use of certain types of tests for certain purposes, a licensed professional counselor is expressly prohibited from administering or interpreting the types of tests as set forth in LSA-R.S. 37:2352(5). As provided in LSA-R.S. 37:1103(3), the administration and interpretation of tests may be performed by licensed professional counselors as set forth in LAC, Title 46, Part LXIII, Chapter 17, Section 1702 E, which provides that, regardless of any other provision to the contrary,
[P]sychologists as well as other appropriately licensed or certified professionals may also administer or use tests of language, educational and achievement tests, adaptive behavioral tests, and symptom screening checklists or instruments, as well as tests of abilities, interests, and aptitudes. The administration and interpretation of these tests is not exclusively within the scope of this regulation. (Emphasis added.)
Therefore, the initial question is whether the particular tests administered and used by Atterberry violate the prohibition against a licensed professional counselor engaging in the practice of psychology or administering or interpreting tests as set forth in LSA-R.S. 37:2352(5).
In the instant case, Atterberry's affidavit was introduced into evidence at the hearing on the preliminary injunction. In his affidavit, Atterberry admitted to administering the tests of which the Board complains. Atterberry stated that, after he administers the tests, he writes a report interpreting the tests in order to identify the problem afflicting his patients. Atterberry further stated that he uses each of these tests for either symptoms screening or to determine aptitudes and abilities, academic achievement, or adaptive behavior.
Atterberry also introduced the affidavits of Thomas C. Terrell, Thomas Hosie, and Theodore P. Remley, Jr., three licensed professional counselors. The counselors stated that, in their opinions, the tests performed by Atterberry could properly be administered by a licensed professional counselor.
The Board introduced the affidavits of nine Ph.D. psychologists.[10] Attached to the affidavits were exhibits J-1 through J-4, which were Atterberry's evaluations of four of his patients.
With regard to Exhibit J-1, the evaluation of a seven-year-old boy, the affiants indicated that Atterberry administered the eight tests at issue. Based on the results of those tests, Atterberry diagnosed Attention Deficit Disorder and recommended counseling. Atterberry's evaluation also noted that the child would be "considered disabled in the behavior *1223 domain of cognitive skills." According to the psychologists, Attention Deficit Disorder is a mental disorder. The psychologists opined that Atterberry administered and interpreted measurement instruments for the purposes of treatment planning for a mental and emotional disorder, disorder of personality, and/or neurological impairment.
With regard to Exhibit J-2, the evaluation of an eleven-year-old boy, the affiants indicated that Atterberry administered the eight tests at issue. Based on the results of those tests, Atterberry diagnosed Attention Deficit Disorder with hyperactivity in addition to depressed moods. Atterberry's evaluation also noted that the child's performance "showed errors which have been associated with neurological impairment." Atterberry's evaluation also recommended counseling and a trial of stimulant medication. The psychologists opined that Atterberry administered and interpreted measurement instruments for the purposes of treatment planning for a mental and emotional disorder, disorder of personality, and/or neurological impairment.
With regard to Exhibit J-3, the evaluation of a nine-year-old boy, the affiants indicated that Atterberry administered the eight tests at issue. Based on the results of those tests, Atterberry noted that the child's condition "would be considered to be severe." Atterberry diagnosed Attention Deficit Disorder and recommended counseling. Atterberry also determined that the child's intellectual functioning was in the "dull-normal range," which would classify the child as a "slow learner." Atterberry's evaluation also suggested the child's "admission to The Helping Place's full time academic program." The evaluation also noted that the child's "perceptual-motor age" is "substantially below" that of children of his own age. The psychologists opined that Atterberry administered and interpreted measurement instruments for the purposes of treatment planning for a mental and emotional disorder, disorder of personality, and/or neurological impairment.
With regard to Exhibit J-4, the evaluation of an eight-year-old boy, the affiants indicated that Atterberry administered the eight tests at issue. Based on the results of those tests, Atterberry indicated that the child demonstrated characteristics "which illustrate and support a diagnosis of autistic disorder." Atterberry's evaluation concluded that the child's intellectual functioning level was "in the mentally retarded range." Atterberry also diagnosed Attention Deficit Disorder, and he associated the child's performance on one of the tests with neurological impairment. Atterberry's evaluation suggested that "further psychological evaluation might be necessary." Atterberry recommended cognitive training to assist the child in overcoming "his attention deficit and autism." The psychologists opined that Atterberry administered and interpreted measurement instruments for the purposes of treatment planning for a mental and emotional disorder, disorder of personality, and/or neurological impairment.

FINDINGS
With regard to whether the Board was required to show irreparable harm, we find that the Board was not required to show irreparable harm for several reasons. First, there is a specific provision of law which otherwise provides injunctive relief. LSA-R.S. 37:2361B addresses injunctive proceedings and provides, as follows:
The board may apply for an injunction in any court of competent jurisdiction to enjoin any person from committing any act which is in violation of this Chapter.
Second, the Board alleged and made a prima facie showing that Atterberry is acting in direct violation of the laws prohibiting the unauthorized practice of psychology. The trial judge determined that the particular tests administered and used by Atterberry violated the prohibition against a licensed professional counselor engaging in the practice of psychology or administering or interpreting tests as set forth in LSA-R.S. 37:2352(5). Moreover, the types of tests administered and the interpretation of those test results by Atterberry are not authorized under the law.
Moreover, assuming that the Board was not relieved of the requirement of proving irreparable injury, the trial court determined that the Board made a prima facie *1224 showing that irreparable harm may result. The trial judge noted that, regardless of Atterberry's qualifications and competence as a licensed professional counselor, he is not a psychologist. By allowing Atterberry to practice psychology, there is the potential for erroneous assessments, which could cause irreparable injury to those persons whose interest the state and the Board are trying to protect.
After reviewing the entire record and the applicable law, we cannot say that the trial judge abused his discretion in granting a preliminary injunction, enjoining Atterberry from administering or using the following tests: the Wechsler Intelligence Scale for ChildrenRevised, the Bender Visual Motor Gestalt Test, the Woodcock-Johnson Psycho-Educational Battery Test of Achievement, the Gordon Diagnostic System, the Achenbach Child Behavior Checklist, Incomplete Sentences Blank, the Kinetic Family Drawing Test, and the Draw-A-Person Test.

OTHER ISSUES
In his answer to the petition for injunctive relief, Atterberry raised various constitutional issues, including violations of due process, equal protection, and restraint of trade. Atterberry also alleged that the statutory provisions were unconstitutionally vague and that the Board's promulgation of the provisions of the Louisiana Administrative Code constituted an unconstitutional delegation of legislative power.
Generally, federal and state governments are prohibited from depriving a person of life, liberty, or property without due process of law. U.S. Const.Amends. V and XIV; LSA-Const. art 1, Section 2 (1974); West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d 973, 975 (La. App. 3rd Cir.1992). The guarantee of equal protection requires that state laws affect alike all persons and interests of persons similarly situated. U.S. Const.Amend. XIV; LSA-Const. art 1, Section 3 (1974).
Under both substantive due process and equal protection analyses, unless a statute interferes with the exercise of fundamental, personal rights or is drawn upon inherently suspect distinctions such as race or religion, its constitutionality is presumed. If such is the case, the challenged statute need only be rationally related to a legitimate state interest. West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d at 975. Moreover, a state statute is presumed to be constitutional, and the party who attacks it has the burden of establishing by clear and cogent evidence that the statute is unconstitutional. West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d at 975.
In his opposition to the request for preliminary relief, Atterberry argued that many of the constitutional issues require full development at a trial of the merits. In granting the preliminary injunction, the trial court did not specifically rule on the various constitutional issues raised by Atterberry. In his written reasons for judgment, the trial judge stated that the issues before the court were whether the use of certain tests constituted the practice of psychology and whether injunctive relief was appropriate. The trial judge did not discuss the constitutional issues separately from the issue of the propriety of granting the preliminary injunction.
In reviewing the constitutional issues presented in the instant case, we find that the statutory provisions at issue are not manifestly unconstitutional, nor did the evidence show that there is a likelihood that the statutory provisions would be declared unconstitutional. Moreover, it appears that the legislation is rationally related to a legitimate state interest. Therefore, we find that the trial judge did not abuse his discretion in granting the preliminary injunction.

CONCLUSION
For the above reasons, the judgment of the trial court, granting the Board a preliminary injunction, enjoining Atterberry from the administration and use of certain tests, is affirmed. The matter is remanded for further proceedings on the issue of whether the Board is entitled to a permanent injunction *1225 on these issues. Atterberry is cast for all costs.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] The petition specifically alleged the following:

On August 4 and 9, 1993, and September 24, 1993, and February 11, 1994, Mr. Atterberry administered and used the Wechsler Intelligence Scale for ChildrenRevised, the Bender Visual Motor Gestalt Test, the Woodcock-Johnson Psycho-Educational Battery Test of Achievement, the Gordon Diagnostic System, the Achenbach Child Behavior Checklist, Incomplete Sentences Blank, the Kinetic Family Drawing Test, and the Draw-A-Person Test for the purpose of diagnosis and treatment planning, and rendering opinions about cognitive level or ability, personality and/or emotional function (including but not limited to Mental Retardation, Attention Deficit Disorder, neurological function and Autism) for at lease (sic) four small children, ranging in ages from 7 to 11 years old.
[3] The original judgment, rendered on November 28, 1994, simply granted the Board's petition for injunctive relief and ordered that a preliminary injunction was thereby issued. Pursuant to an amended judgment, signed December 5, 1994, the particular acts from which Atterberry was enjoined were itemized.
[4] Ordinarily, an interlocutory judgment may be appealed only if it may cause irreparable injury. LSA-C.C.P. art. 2083. An exception to this rule is LSA-C.C.P. art. 3612, which specifically allows an appeal to be taken "as a matter of right" from a judgment relating to a preliminary injunction. Ormond Country Club v. Dorvin Developments, Inc., 498 So.2d 144, 147 (La.App. 5th Cir.1986), writ denied, 500 So.2d 423 (La.1987); Federal National Mortgage Association v. O'Donnell, 446 So.2d 395, 399 (La.App. 5th Cir.1984).
[5] Although the opinion does not address each assignment of error individually, the opinion adequately addresses all issues raised.
[6] The Board's appellate brief does not argue its error or otherwise discuss whether the trial court erred in failing to enjoin Atterberry from using any tests as prohibited by LAC-46:LXIII 1702 C, LSA-R.S. 37:1103(3) and LSA-R.S. 37:1107 E(2). The only mention of this argument is set forth in the conclusion wherein the Board reiterates its request that this court modify the trial court judgment, which is not sufficient to constitute briefing of an assignment of error. See Uniform RulesCourts of Appeal, Rule 2-12.4.
[7] Intellectual areas include those normative-based individually administered instruments used to measure cognitive functions such as abstract reasoning, fund of knowledge, and problem solving. LAC, Title 46, Part LXIII, Chapter 17, Section 1702 D(1).
[8] This area includes those normative-based instruments used to measure both trait and state aspects of personality and emotional characteristics and functioning. LAC, Title 46, Part LXIII, Chapter 17, Section 1702 D(2).
[9] This area includes those normative-based instruments used to make inferences about brain and behavior relationships. These relationships include, but are not limited to, sensorimotor functioning, attention and concentration skills, memory functioning, language function, concrete and abstract problem solving, and measures of cognitive flexibility and creativity. LAC, Title 46, Part LXIII, Chapter 17, Section 1702 D(3).
[10] The affidavits introduced by the Board include the affidavits of: Jimmie D. Cole, Jeffrey A. West, F. Merritt Ayad, Thomas M. Wolf, George L. Henderson, James R. Gay, Phillip T. Griffin, F. William Black, and John F. Bolter.