941 So.2d 45 (2006)
James G. DERBES
v.
CITY OF NEW ORLEANS.
No. 2005-CA-1249.
Court of Appeal of Louisiana, Fourth Circuit.
August 30, 2006.
*46 James G. Derbes, New Orleans, LA, pro se.
Edward R. Washington, III, Deputy City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, Sherry S. Landry, Former City Attorney, New Orleans, LA, for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., and Judge ROLAND L. BELSOME.
CHARLES R. JONES, Judge.
The City of New Orleans appeals the district court's judgment granting the Appellee's, Mr. Derbes', Partial Motion for Summary Judgment and Motion for Preliminary Injunction. The judgment prevents the City from interfering with his current usage of his property, as well as denying the City's Motion for Summary Judgment as to whether Mr. Derbes' use of the property for paid events has achieved non-conforming status under the terms of La. R.S. 9:5625(G) as a matter of law. The judgments of the district court are AFFIRMED.
Mr. Derbes is the owner of the Benachi House, a property bearing municipal number 2257 Bayou Road, New Orleans, Louisiana. The property is located in Square 1191 of the Third Municipal District, in an area zoned RD-3. The Benachi House is a local landmark built circa 1858 in the Greek Revival style. Mr. Derbes purchased the property in 1982. He completely restored the home, landscaped the grounds, and then restored the adjoining Carriage House.
The Benachi House is both a "historical preservation," and a "landmark." It is located in the Esplanade Ridge Historic District, and within that district it is rated "Blue," a building of Major Architectural Importance.[1] The Benachi House was also designated as an Orleans Parish "landmark" by the Orleans Parish Landmarks Commission.
By Ordinance No. 15696, the New Orleans City Council granted a conditional use for the Benachi House as a bed and breakfast historic home, in accordance with Article 11 of the City's Comprehensive Zoning Ordinance (hereinafter "CZO"). The Benachi House has been continuously operated, without interruption, as a bed and breakfast historic home since the Ordinance was signed into law on February 10, 1993.
The neighborhood is one of mixed uses. The House on Bayou Road, another bed and breakfast historic home, and Restaurant Indigo, are both located in the same Square (No. 1191) as the Benachi House. Across Bayou Road from the Benachi *47 House is Square 1190, where two properties are non-conforming uses, currently being used as offices. In the 2300 Block of Esplanade Avenue is the Degas House, a bed and breakfast that, in 1997, was authorized by the New Orleans City Council to conduct paid event rentals.
The record shows that beginning in 1985, and on a regular and consistent basis since 1993, Mr. Derbes has allowed bed and breakfast guests of the Benachi House to use it for events, mostly weddings and wedding receptions. For most of the events, Mr. Derbes charged a fee in addition to the regular charges for rental of the guest rooms.

Procedural History
In 2004, Mr. Derbes sought an additional conditional use permit from the New Orleans City Planning Commission and the New Orleans City Council. Specifically, Mr. Derbes sought permission: (1) to increase the number of bed and breakfast guest rooms from two to four (which was granted); (2) to operate the Benachi House bed and breakfast while residing in a house to be constructed on an adjoining lot that is historically a part of the Benachi House grounds (which was denied); and (3) to hold paid events  referred to by the parties as "event rentals"  at the Benachi House (which was also denied).
Mr. Derbes filed suit seeking review of the adverse City Council decisions of numbers (2) and (3), and additionally sought, inter alia, a preliminary and permanent injunction "enjoining and restraining the City from taking any action against petitioner with respect to events at the Benachi House . . ." The City subsequently filed a Motion for Summary Judgment as to whether Mr. Derbes' use of the Benachi House for paid events has achieved non-conforming status under the terms of La. R.S. 9:5625(G) as a matter of law.
Mr. Derbes then filed a Motion for Partial Summary Judgment and a Motion for Preliminary Injunction (to prevent the City from interfering with his current use of the Property). On March 31, 2005, the district court granted both of Mr. Derbes' motions and denied the City's motion, reasoning that the provisions of La. R.S. 9:5625(G) apply to use regulations and, as such, the ten year prescriptive period from the first violation applies in the instant case. The district court found that Mr. Derbes had acquired a legal non-conforming use[2] of the property that was continuous and uninterrupted from October 1993 to October 2004. Accordingly, the district court also granted Mr. Derbes' Motion for Preliminary Injunction enjoining the City from attempting to prevent Mr. Derbes' use of his property in accordance with his legal non-conforming use. The district court designated the partial judgment as final, and this appeal follows.

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Independent Fire Insurance Company v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *48 if any, scrutinized equally, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the mover. Board of Assessors of the City of New Orleans v. City of New Orleans, XXXX-XXXX, p. 8 (La.App. 4 Cir. 9/25/02), 829 So.2d 501, 506, writ denied, 2002-2633 (La.1/10/03), 834 So.2d 439. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and if, without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992).
Moreover, because the interpretation of a statute is at issue, we will review de novo, as this Court reviews legal questions de novo.

Assignment of Error Nos. 12:
The City contends that the district court erred in denying its Motion for Summary Judgment and in granting Mr. Derbes' Partial Motion for Summary Judgment with respect to whether the property has acquired a legal non-conforming use. Specifically, the City argues that the use regulation statute  La. R.S. 9:5625(A)  applies to the Benachi House use regulation, rather than the zoning restriction statute  La. R.S. 9:5625(G)  as the district court found. We disagree and find that the district court correctly found that the provisions of LSA-R.S. 9:5625(G) apply to a use regulation imposed upon an historic home. We also note that there is no controlling precedent on this particular legal question; thus, it is before us res nova.
The City also contends that the 1993 version of the statute applies to the instant case given that it was the law in effect at the time of the initial use violation by Mr. Derbes. We also disagree with this contention, and find that the district court correctly applied Subsection (G) as amended in 2001.
Louisiana Revised Statute 9:5625 provides the controlling time periods and means by which properties can acquire non-conforming status under Louisiana law. The statute consists of three sections pertinent to the instant matter. Subsection (A)(1) applies to all properties throughout the state and deals with "zoning restrictions, building restrictions, and subdivision regulations." Subsection (A)(3) also applies to all properties throughout the state and deals with "use regulations." Lastly, Subsection (G) applies only to historical preservations or landmarks and deals with a "zoning restriction or regulation." La. R.S. art. 9:5625 provides in pertinent part:
A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, except those actions created for the purpose of amortization of nonconforming *49 signs and billboards enacted in conformity with the provisions of R.S. 33:4722, which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within five years from the first act constituting the commission of the violation.
. . .
(3) With reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provisions of R.S. 33:4722, must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.
. . .
G. (1) The provisions of this Section shall not apply to property or areas which have been identified as historic districts, historical preservations or landmarks by any historic preservation district commission, landmarks commission, or the planning or zoning commission of a governing authority; however, the prescriptive period within which to bring an action to enforce a zoning restriction or regulation or a violation thereof shall be ten years from the first act constituting the commission of the violation.
(2) The provisions of this Subsection shall apply only to zoning or planning restrictions made by a municipality or parish, or other municipal or parish entity responsible for zoning, planning, or building restrictions. (Emphasis added)
The historical preservation provision was first added to the statute effective August 15, 1997. As of August 15, 2001, three changes were made in the historical preservation provision: "shall apply" was changed to "shall not apply" and "five years" was changed to "ten years," and the Subsection was divided into two parts.
Before the amendments adding Subsection (G), the violation of a "use" provision for all types of properties required written notice to the City and a period of two years. Thus, if after receiving written notice of a use violation, and the City took no action for two years, the use achieved non-conforming status and was allowed. In 1997, a new provision was added relating specifically to historical buildings and landmarks, eliminating the requirement of written notice to the City, and providing that prescription would commence with the "first act constituting the violation." However, prescription was extended from two years to five years.
The City first argues that the applicable statute for the Benachi House controversy is La. R.S. 9:5625(A)(3), cited above. Thus, the question in the instant matter is what type of violation is grandfathered in by the ten-year prescriptive period and which version of the statute applies to this case. Mr. Derbes asserts that La. R.S. 9:5625(G) covers zoning "use regulations" in addition to "zoning restrictions," whereas the City contends that only zoning violations are covered. We find that the applicable statute, La. R.S. 9:5625(G), does cover zoning "use regulations;" thus, the district court correctly denied the City's Motion for Summary Judgment and granted *50 Mr. Derbes' Partial Motion for Summary Judgment.
First we look to what constitutes a use violation versus a zoning violation. According to the City, "zoning restrictions" are visible, physical items, such as "building height, front-yard, side-yard or rear-yard setback requirements, or fence heights." The City asserts that a use violation can be hidden from view, while a zoning violation cannot. Therefore, the former requires written notice to the City for any prescriptive period to commence, while the latter requires no such written notice because it is obvious from plain view. Hence, the City is required to inspect, or notice, zoning violations, but obviously cannot know about use violations unless they are disclosed. While we find that because the use of the Benachi House for events was open and obvious[3] (it is a zoning violation according to the very description provided by the City), we find that the distinction drawn by the City is of no moment in the case sub judice.
Even if the violation were considered a use violation, we find that Subsection 5625(G) would still apply to the facts of this case pursuant to the plain language of the statute. The City contends that Subsection 5625(A)(3) remains applicable to use violations for historic properties and thus, Mr. Derbes was required to give written notice of his use violation to the City. However, we disagree and find that according to the plain language of Subsection (G) the property at issue is excluded from Subsection (A)(3). Mr. Derbes has acquired a legal non-conforming use in compliance with the applicable law, Subsection 5625(G).
By its plain terms, Subsection (G) applies to "a zoning restriction or regulation" and therefore applies to all types of zoning violations. Interpretation of any statute "begins, as it must, with the language of the statute itself." David v. Our Lady of the Lake Hospital, Inc., 02-2675 (La.7/2/03), 849 So.2d 38, 46. We find that the City's proposed construction is contrary to the plain language of the statute. The provisions of Act 871 are clear and unambiguous. Subsection (G) clearly and unambiguously makes the remainder of Section 5625 inapplicable to historic properties such as the one at issue. Specifically, Subsection (G) provides in pertinent part that "The provisions of this Section shall not apply to historic properties . . ." (Emphasis added) When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9;[4]O'Brien v. Rizvi, 04-2252 (La.4/12/05), 898 So.2d 360, 366; Russo v. Vasquez, 94-2407 (La.1/17/95), 648 So.2d 879, 883. "Only where ambiguity exists within the body of the enacted legislation does it become necessary to look further that [sic] the text to determine the legislative intent." State v. Barbier, 98-2923 (La.9/8/99), 743 So.2d 1236, 1239. "Where no ambiguity exists, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." Id., citing Tourchard v. Williams, 617 So.2d 885 (La. 1993). While we find that because the provisions of Act 871 are clear and unambiguous, *51 there is no need to review the legislative history under the pretext of determining legislative intent. We do find this issue to be one of first impression; therefore, we will examine the history of Act 871.
When the commercial use of the Benachi House began in 1993, Section 5625(A) stated as to use violations (the 1993 amendment added subsecs. C to F, relating to building and zoning) that in order for property to acquire a legal non-conforming use, there must have been written notice to the City, followed by two years of continuous uninterrupted use of the property in the non-conforming manner. If, after receiving written notice, the City did not bring an action to abate the illegal use, then in two years the City's action to abate the use prescribed, and the owner of the property would have obtained a non-conforming use (or grandfather status for his or her property).
As to zoning restrictions or regulations, or planning or building restrictions, in order for a property to acquire a legal non-conforming status, or in order for these types of physical violations to become grandfathered in, there must have been five years of a continuous uninterrupted physical violation of the restriction or regulation in a non-conforming manner. Written notice to the City was not required to start the five-year period. If, after the passage of five years, the City did not bring an action to abate the violation of zoning restriction or regulation, or planning or building restriction, then the City's action to abate the violation prescribed, and the owner of the property would have obtained a non-conforming status (or grandfather status) for that feature of his property which deviated from the restrictions or regulations.
In 1997, the law was changed to use only. Acts 1997, No. 1146, § 1 added subsec. G. Acts 2001, No. 871, § 1, in par. (G)(1), inserted not before apply to property; inserted historic districts, after identified as; and changed five years to ten years at the end of the paragraph.
The law was changed to require that in order for a property to acquire a legal non-conforming use, there must have been written notice to the City, followed by five years of continuous uninterrupted use of the property in the non-conforming manner. If, after receiving written notice, the City did not bring an action to abate the illegal use, then in five years the City's action to abate the use prescribed.
For all practical purposes, the 1997 amendment basically eliminated the requirement of written notice to the City. The historical preservation provision was first added to the statute effective August 15, 1997, as follows:
The provisions of this Section shall apply to property identified as historical preservations or landmarks by any historic preservation district commission, landmarks commission, or the planning and/or zoning commission of a governing authority; however, the prescriptive period within which to bring an action to enforce a zoning restriction or regulation or a violation thereof shall be five years from the first act constituting the commission of the violation. [Emphasis added]
Thus, under the 1997 amendment, the prescriptive period was clearly intended to commence with "the first act constituting the violation," not with "written notice" to the City as required under the 1993 version of the prior law.
When the statute was amended in 1997 to eliminate the written notice requirement, Mr. Derbes needed only to establish a five-year period of continuous and uninterrupted use of the property in order *52 to acquire non-conforming status. Any five-year period of continuous and uninterrupted use of the property for social events before 1997 through the effective date of the 2001 amendment was sufficient to establish a non-conforming use. The record establishes that beginning in 1993, paid events at the Benachi House and commercial activities in connection therewith continued on an uninterrupted basis, for a period of five years, even before the 2001 amendment was enacted.
In 2001, the law was changed again as to non-use violations. That is, the law was changed relative to violations of zoning restrictions or regulations, or planning or building restrictions. The historic preservation provision of the statute, La. R.S. 9:5625(G), was amended effective August 15, 2001. The pertinent provisions of the amended statute reads as follows:
G. (1) The provisions of this Section shall not apply to property or areas which have been identified as historic districts, historical preservations or landmarks by any historic preservation district commission, landmarks commission, or the planning or zoning commission of a governing authority; however, the prescriptive period within which to bring an action to enforce a zoning restriction or regulation or a violation thereof shall be ten years from the first act constituting the commission of the violation. (Emphasis added)
The City concedes that as to this amendment, written notice is not required. Thus, there is no dispute that under the 2001 amendment, the prescriptive period clearly begins with "the first act constituting a violation." The law was changed to require that in order for a property in a historic district to acquire a legal non-conforming status for violation of a zoning restriction or regulation, or planning or building restriction, there only needed to be ten years of continuous uninterrupted existence of the illegal feature on or about the property in a non-conforming manner without any written notice. If, after ten years of illegal existence of the non-conforming feature, without the necessity of written notice the City did not bring an action to abate the illegal feature, then in ten years the City's action to abate the physical violation prescribed.
Thus, in both the 1997 and the 2001 versions of the historical preservation provision, the prescriptive period clearly commences with "the first act constituting the violation."
One crucial issue in the present case involves which prescriptive period applies, and thus, on which date the prescriptive period commenced to accrue with respect to Mr. Derbes' non-conforming use of the property. Because La. R.S. 9:5625 was amended after the initial use of the property for event rentals, the question arises as to whether the original or the amended version of Section 5625 must be considered.
However, the City contends that the legislature did not "intend" to make the amendment to Subsection (G) apply retroactively, and therefore, the 1993 version of the statute (which required written notice to the City of the non-conforming event rental use for the prescriptive period to commence) applies to the case sub judice.
The City further contends that in accordance with the Louisiana Supreme Court decision in City of New Orleans v. Elms, 566 So.2d 626 (La.1990), the law in existence during the prescriptive period must be applied in this case. However, we find the facts of Elms to be distinguishable from the facts of this case. The law is clear that prescriptive statutes are to be applied retroactively unless the legislature provides to the contrary or if *53 to do so would operate to disturb a vested right. Lott v. Haley, 370 So.2d 521, 523 (La.1979). The Court, in Elms, noted that because of the change in the law "both the original and the amended provisions" of the statute had to be considered. The Court then applied the pre-1972 law because the defendants in that case had proven that prescription began to accrue in 1969, and that the defendants had acquired a vested right in the non-conforming use of their property before the statute was amended. The old law therefore applied. Id. at 629.
If the property in Elms had not acquired non-conforming status before the law changed, the new law (requiring written notice to the City) probably would have been applied, although Elms does not directly address the issue of whether the amended provisions of 5625 (G) are entitled to retroactive as well as prospective application. We find that the district court correctly applied the 2001 version of La. R.S. 5625 in the instant matter.

Assignment of Error No. 3:
Lastly, the City argues that the district court erred in granting Mr. Derbes' Motion for Preliminary Injunction enjoining the City from attempting to prevent Mr. Derbes' use of his property in accordance with his non-conforming use. However, we find no error in the district court's judgment granting Mr. Derbes' Motion for Preliminary Injunction, as we find that Mr. Derbes made a prima facie showing that the conduct to be enjoined is reprobated by law; thus, Mr. Derbes is entitled to injunctive relief without the showing that no other adequate legal remedy exists.
The standard of appellate review for the granting of a preliminary injunction was set out by this Court in Burnham Broadcasting Company v. Williams, 629 So.2d 1335, 1338 (La.App. 4 Cir.1993), writ denied, 632 So.2d 770 (La.1994), cert. denied, 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 25 (1994):
La. C.C.P. art. 3601, relative to the grounds for issuance of an injunction, provides, in pertinent part, as follows:
`An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law . . . '
`During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited . . . '
In order to prevail at a hearing for preliminary injunction, the moving party must show two (sic) things: (1) that the injury, loss or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he will be likely to prevail on the merits of the case.
Hall v. Fertility Institute of New Orleans, a Professional Corp., 94-1135 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1350-51, citing General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979); Franz v. Cormier, 579 So.2d 1201 (La.App. 5 Cir. 1991).
A preliminary injunction may be issued on a prima facie showing by the petitioner that he is entitled to relief. Mary Moe, L.L.C. v. Louisiana Board of Ethics, 03-2220 (La.4/14/04), 875 So.2d 22, 29, citing Werner Enterprises, Inc. v. Westend Dev. Co., 477 So.2d 829, 832 (La.App. 5 Cir.1985); Kliebert Educational Trust v. Watson Marines Services, Inc., 454 So.2d 855 (La.App. 5 Cir.1984), writ denied, 457 So.2d 682 (La.1984). Therefore, the petitioner is required to offer less proof than is necessary in an ordinary proceeding for *54 permanent injunction. Hall, 647 at 1351. (citations omitted) Moreover, because "a preliminary injunction is an interlocutory procedural device designed to preserve the status as it exists between the parties pending trial on the merits, a trial judge has great discretion to grant or deny the relief requests." Id.; See also, Sessions, Fishman & Nathan, L.L.P. v. Salas, 04-1790 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377.
Additionally, the Louisiana Supreme Court has stated "a showing of irreparable harm is not required in cases where the conduct sought to be restrained is unlawful." Jurisich v. Jenkins, 749 So.2d 597 (La.1999). Mr. Derbes alleges that because the period within which to enforce a zoning restriction or regulation has expired that any attempt by the City to enforce the Comprehensive Zoning Ordinance, with respect to event rentals, would be unlawful. We agree for the reasons discussed infra, and also find that the facts in this case meet the Burnham Broadcasting test; thus, the City's third assignment of error lacks merit.

DECREE
The judgments of the district court are hereby AFFIRMED.
AFFIRMED.
BELSOME, J., concurs in the result.
NOTES
[1] See A Guide for Rating of Buildings as to their Architectural Significance, published by the Historic Districts Landmarks Commission.
[2] A legal non-conforming use is designed to protect those uses that were established before the enactment of a restrictive zoning regulation. City of New Orleans v. Elms, 566 So.2d 626, 628 (La.1990); Weisler v. Board of Zoning Adjustments and the City of New Orleans, 98-3007 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1260, citing Humphrey v. Robertson, 97-1742 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 337.
[3] Mr. Derbes provided several affidavits signed by neighbors attesting to the fact that they were well aware of Mr. Derbes' use of the Benachi House for paid event rentals.
[4] La. C.C. art. 9 provides:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.