983 So.2d 239 (2008)
CHALMETTE AMUSEMENT COMPANY, INC.
v.
Lionel J. ALPHONSO d/b/a De Pope Launch & Tavern, De Pope Launch & Tavern, Inc., J & R Amusement Company, Inc. and Lucky Coin Machine Co.
No. 2007-CA-1512.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 2008.
A. Scott Tillery, Tillery & Tillery, Metairie, LA, for Plaintiff/Appellant.
*240 Sidney D. Torres III, Roberta L. Burns, David C. Jarrell, Law Offices of Sidney D. Torres, III, APLC, Chalmette, LA, for J & R Amusement Company, Inc.
Daniel L. Dysart, Elizabeth R. Borne, Dysart & Tabary, L.L.P., Chalmette, LA, for Lionel J. Alphonso d/b/a De Pope Launch & Tavern, Inc.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.).
EDWIN A. LOMBARD, Judge.
This appeal is from the trial court judgment in favor of the defendants, Lionel J. Alphonso d/b/a De Pope Launch ("Mr. Alphonso"), Tavern and De Pope Launch and Tavern, Inc., ("De Pope Tavern"), and J & R Amusement Company ("J & R Amusement")[1] and against plaintiff/appellant, Chalmette Amusement Company, Inc., ("Chalmette Amusement") for a preliminary injunction. After review of the record in light of the applicable law and arguments of the parties, we affirm and remand.
Relevant Facts and Procedural History
On March 4, 2004, De Pope Tavern entered into a 5-year agreement with the appellant entitled "Chalmette Amusement Company Gaming Device and Facility Lease" in which De Pope Tavern, designated by the terms of the agreement as the lessor, agreed to lease to Chalmette Amusement, designated by the terms of the agreement as the lessee, "the necessary square footage of floor space . . . for the exclusive installation of video gaming devices." The agreement provided that (1) the gaming devices remained the sole property of the Chalmette Amusement; (2) Chalmette Amusement retained the option to terminate the lease "at any time the net proceeds is not adequate to pay for the cost of providing said devices"; (3) De Pope Tavern as lessor was required to provide all necessary electrical outlets and to "use all best efforts to allow the operation of said equipment during all usual business hours without hindrance"; and (4) in the event of any breach of the lease Chalmette Amusement had the option of "immediately terminat[ing] this Lease, and remov[ing] all of its devices without interference of any kind from the Lessor."
In August 2005, Hurricane Katrina swept through St. Bernard Parish and as a result of the six feet of water which flooded and destroyed the interior of De Pope Tavern, the video gaming and other amusement devices owned by Chalmette Amusement (and placed in De Pope Tavern in accordance with the terms of the March 2004 agreement) was ruined. At some point after the hurricane and prior to December 2005, Chalmette Amusement removed the tags issued by the Louisiana State Police from its ruined amusement devices and in December 2005 instructed Mr. Alphonso (who was in the process of gutting his building) to dispose of the ruined gaming devices as storm debris.
Subsequently, in the spring of 2006, Mr. Alphonso made the decision to reopen the De Pope Tavern. He entered into an agreement with J & R Amusement for installation of video poker machines in the De Pope Tavern. Thus, De Pope Tavern reopened in September 2006 with video gaming devices installed by J & R Amusement.
*241 On November 20, 2006, Chalmette Amusement filed a petition for temporary restraining order (TRO), preliminary injunction and permanent injunction, claiming that the agreement entered into on March 4, 2004, was a contract granting Chalmette Amusement the exclusive right to install and maintain video gaming devices at the De Pope Tavern and requesting that De Pope Tavern be enjoined from allowing J & R Amusement gaming devices on the premises, that J & R Amusement be required to remove their devices, and that Chalmette Amusement be allowed to reinstall its own gaming devices. Chalmette Amusement alleged breach of contract, contending that by contract entered into on March 4, 2004, Mr. Alphonso granted Chalmette Amusement the exclusive right for a five year period to install and maintain video gaming devices in De Pope Tavern and that Mr. Alphonso breached this contract when he reopened his business after Hurricane Katrina with gaming devices installed by J & R Amusement. In support of its petition, Chalmette Amusement attached a copy of the March 4, 2004, agreement between the parties, which it characterizes as a contract but which is entitled "Chalmette Amusement Company Video Gaming Device and Facility Lease" wherein, as stated above, the De Pope Tavern (designated as lessor) agreed to lease the necessary square footage of floor space to Chalmette Amusement (designated as lessee) for the exclusive installation of video gaming devices and, in consideration, "the Lessee agrees to divide the net proceeds from the use of the above described video gaming devices with the Lessor equally such that fifty (30%) [sic] shall be payable to the Lessor and fifty (70%) [sic] shall be payable to the Lessee."[2] In addition, Chalmette Amusement attached a second agreement (not at issue in this matter) pertaining to music and cigarette devices, dated October 20, 2002, and entered into for a five-year term.
On November 28, 2006, the trial judge signed the TRO and set the hearing date for the preliminary injunction. In light of the bond set, however, the appellant elected not to have the TRO issued and the matter proceeded to the hearing on the preliminary injunction.
On June 12, 2007, counsel for Mr. Alphonso and De Pope Tavern filed an opposition to the petition of Chalmette Amusement for TRO, preliminary injunction, and permanent injunction arguing that (1) any contract entered into by the parties was dissolved by Hurricane Katrina in accordance with La.Code Civ. Proc. art. 1875; and (2) the agreement dated March 4, 2004, is a lease and therefore, in accordance with La. Civ.Code art. 2714, was terminated when the leased devices were destroyed by Hurricane Katrina in August 2005. In responding memorandum, counsel for Chalmette Amusement argued that the contract between the parties was not a lease as defined by Article 2714 and, alternatively, that Article 2714 is not applicable because the leased premises were not destroyed.
On June 15, 2007, counsel for J & R Amusement filed a memorandum in opposition to the petition filed by Chalmette Amusement, arguing that (1) a hearing on a preliminary injunction is not the proper procedural vehicle for entertaining a mandatory injunction as to J & R and, notwithstanding this procedural defect, Chalmette Amusement is unable to sustain *242 the requisite burden of proving its entitlement to a mandatory injunction.
At the hearing on the petition for a preliminary injunction held on June 15, 2007, the trial judge heard the testimony of Michelle Alphonso and Thomas Paccacio, Jr., and admitted into evidence the deposition testimony of Mr. Alphonso, the deposition testimony of Troy Estopinal (the general manager of Chalmette Amusement), and the agreements between the parties dated March 4, 2005, and October 20, 2002.
On June 29, 2007, the trial judge signed a judgment with incorporated reasons, wherein he specifically stated that the matter before the court at the hearing on June 15, 2007, was the petition for a preliminary injunction and ordering judgment in favor of Mr. Alphonso, De Pope, and J & R Amusement and against Chalmette Amusement, dismissing the action with each party to bear its own costs. In his reasons for judgment, the trial judge stated as follows: (1) the agreement at issue is a lease and any right of Chalmette Amusement to injunctive relief must be derivative of that lease: (2) the object of the lease is the leased premises and the placement of the video poker machines relates to the purpose for which the leased premises are to be used; (3) the cases cited by Chalmette Amusement in support of the issuance of a preliminary injunction arise from contractual agreements other than a lease, do not concern the occurrence of an unforeseen fortuitous event like a hurricane and, as such, are not controlling and Chalmette Amusement's reliance on them to permit issuance of an injunction with a requisite showing of irreparable injury is misplaced; (4) seldom, if ever, does a lease dispute exist which is not compensable and calculable in monetary terms; (5) the issuance of a preliminary injunction as it pertains to J & R Amusement in this case is in the nature of a mandatory injunction[3] since its issuance would require a non-party to the agreement to remove their video poker machines from the De Pope location and, as such, differs greatly from an preliminary injunction which seeks to preserve the status quo pending a trial on the final injunction; and (6) "[t]his Court finds only the injunctive relief sought by the Plaintiff is not available in this set of facts and under these circumstances and this decision is limited accordingly since that is the singular ultimate issue before this Court."
Discussion
Chalmette Amusement appeals the judgment of the trail court, arguing that (1) "the trial court erred in dismissing the plaintiff's action in its entirety after hearing only the evidence on rule for preliminary injunction"; (2) the trial court erred in finding that the subject video gaming contract was a lease; (3) the trial court erred in holding, even if characterized as a lease, that the contract was dissolved for impossibility of performance due to the destruction of the leased premises; and (4) the trial court erred in failing to grant injunctive relief against Mr. Alphonso and J & R Amusement.
Pursuant to La.Code Civ. Proc. art. 3601, "[a]n injunction shall be issued where irreparable injury, loss, or damage my otherwise result to the applicant. . . ." *243 To prevail at a hearing for a preliminary injunction, the moving party must show that: (1) irreparable injury, loss, or damage will be suffered if the injunction is not issued; (2) entitlement to relief sought; and (3) likelihood of prevailing on the merits of the case. Burnham Broadcasting Co. v. Williams, 629 So.2d 1335, 1338 (La. App. 4 Cir.1993). Because the preliminary injunction is an interlocutory device designed to preserve the status quo between the parties pending trial on the merits, the trial judge has great discretion in determining whether to grant or deny the relief requested. Id.
First, the hearing transcript and the trial judge's reasons for judgment indicate that the only matter before the court was the preliminary injunction phase of the case, not the trial of the merits of the permanent injunction, and therefore the judgment rendered pertains only to the preliminary injunction.[4] Accordingly, the appellant's first assignment of error is without merit.
On appeal from a judgment denying the petition for a preliminary injunction, the issue before this court is whether the trial judge abused his great discretion in denying the relief requested. Clearly, the trial judge did not abuse his great discretion in determining that the agreement drafted by Chalmette Amusement and entitled "Chalmette Amusement Company Gaming Device and Facility Lease" is a lease and that, as such, compensable and calculable in monetary terms. Accordingly, if Chalmette Amusement is successful after the trial on the merits, its damages are calculable based upon the revenue generated by the J & R devices.
Finally, we have closely reviewed the trial court's judgment and incorporated reasons for judgment in light of the appellant's argument that the trial court erred in holding that, even if characterized as a lease, the contract was dissolved for impossibility of performance due to the destruction of the leased premises. Although the trial judge noted that De Pope argued that the lease was dissolved by the fortuitous event of Hurricane Katrina, that no rent was generated or paid during the year the property was under repair, and that the video poker machines were destroyed and discarded upon the recommendation of the appellant's manager, the trial judge did not make a finding or rule on the issue of whether the lease was dissolved for impossibility of performance. Because this issuewhether the lease was dissolved by the hurricane and subsequent eventsappears to be the crux of the matter to be tried on the merits, it would be improper for this court to issue an advisory opinion on the matter at this point in the proceedings.
Conclusion
The judgment of the trial court is affirmed and the matter is remanded to the trial court for further proceedings on the petition for a permanent injunction.
AFFIRMED AND REMANDED.
TOBIAS, J., concurs in part, dissents in part, and assigns reasons.
TOBIAS, J., concurs in part, dissents in part, and assigns reasons.
As I previously stated in Historic Restorations, Inc. v. RSUI Indem. Co., 06-1178, pp. 1-3 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 210-211 (Tobias, J., dissenting):

*244 Under Louisiana law, it is not possible to issue a mandatory preliminary injunction, because mandatory injunctions and preliminary injunctions have different procedural rules and different evidentiary burdens as a matter of law. [Footnote omitted.] A mandatory injunction, as opposed to a prohibitory injunction, compels a party to perform a specific action. Denta-Max v. Maxicare La., Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, citing, Bollinger Machine Shop & Shipyard, Inc. v. U.S. Marine, Inc., 595 So.2d 756, 758 (La.App. 4th Cir.), writ denied, 600 So.2d 643 (La. 1992); Maestri v. Destrehan Veterinary Hosp., 554 So.2d 805, 808 (La.App. 5th Cir.1989); Werner Enterprises, Inc. v. Westend Development Co., 477 So.2d 829, 832 (La.App. 5th Cir.1985).
In the case at bar, the judgment rendered by the trial court contains both prohibitory orders ("RSUI is enjoined . . . from changing the terms, conditions, or premium for renewal of Policy No. NHD341277 . . .") and a mandatory orders ("and is ordered to renew the same under the same terms and conditions and for the same premium as provided for in the existing policy"). [Footnote omitted.] However, insofar as RSUI is ordered to maintain an insurance policy for one year, it is clear that the trial court has ordered it to affirmatively do (i.e., perform an act) something, making it a mandatory injunction.
We noted in Denta-Max, supra, that a mandatory injunction has substantially the same effect as a permanent injunction. Denta-Max, p. 3, 671 So.2d at 997. De facto, they are one and the same. A mandatory injunction may not issue absent a full evidentiary hearing, while a prohibitory preliminary injunction only requires a prima facie showing that the applicant for the writ will prevail on the merits. As the Louisiana Supreme Court has stated in City of New Orleans v. Board of Directors of the Louisiana State Museum, 98-1170, p. 11 (La.3/2/99), 739 So.2d 748, 756, citing, Denta-Max v. Maxicare La., Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995:
A mandatory injunction may not be issued on a merely prima facie showing that the party seeking the injunction can prove the necessary elements; instead the party must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.
We held in Denta-Max that a mandatory injunction may not issue absent "a full trial on the merits in which the taking of evidence is not limited that [the petitioner] is entitled to the injunction." Id., 95-2128 at p. 5, 671 So.2d at 998.
In Dore v. Jefferson Guaranty Bank, 543 So.2d 560 (La.App. 4th Cir.1989), this court held that the requirements for a mandatory injunction were met because the trial court "conducted an evidentiary hearing at which all parties were present, represented by counsel and were afforded the opportunity to present evidence and cross-examine witnesses." 543 So.2d at 562.
Since the parties stipulated that they were trying only the issue of a mandatory preliminary injunction, which as a matter of law does not exist, the trial court could not err as a matter of law in denying the mandatory preliminary injunction. Therefore, I would pretermit any other discussion of whether the trial court was correct in denying the preliminary injunction for same is merely dicta.
I disagree, however, with the majority's conclusion that because the reasons for judgment discuss only the preliminary injunction, *245 the actual judgment rendered by the trial court did not dismiss the case in its entirety and only dismissed the request for the preliminary injunction.
The judgment of the trial court in pertinent part states:
JUDGMENT AND INCORPORATED REASONS FOR JUDGMENT
* * *
IT IS ORDERED, ADJUDGED AND DECREED there be judgment herein in favor of Defendants, Lionel J. Alphonso, d/b/a De Pope Launch and Tavern, De Pop Launch and Tavern, Inc., J & R Amusement Company Inc. and against Petitioner, Chalmette Amusement Company, Inc., dismissing this action, with each party to bear their own cost.
First of all, contrary to the specific mandatory language of La. C.C.P. art. 1918, the reasons for judgment were made a part of the judgment. La. C.C.P. art. 1918 states:
A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set forth in an opinion separate from the judgment. [Emphasis supplied.]
I do not understand how one can reasonably interpret the phrase "dismissing this action" in the trial court's judgment to mean anything other than all causes of actionthe action for injunction in all respects.
Second, it is Hornbook Louisiana law that the language of the decree in the judgment controls over any reasons given in support of the decree. Dismissing the action and taxing costs at this stage supports the conclusion that the trial court intended to dismiss the action entirely. See, e.g., Boykins v. Boykins, 04-0999, p. 6 (La.App. 4 Cir. 4/24/07), 958 So.2d 70, 75; Hansel v. Hansel, 00-1914, p. 13 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 883, writ denied 01-3365 (La.3/8/02), 811 So.2d 880; Edwards v. Saul, 93-1802 n. 1 (La.App. 4 Cir. 5/26/94), 637 So.2d 1258, 1259; Kaufman v. Adrian's Tree Service, Inc., 00-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104, citing Northshore Regional Medical Center v. Parish of St. Tammany, 96-0717, p. 7 (La.App. 1 Cir. 12/20/96), 685 So.2d 614, 617, citing First Progenitor, L.L.C. v. Lake Financial Services, Inc., 95-251, p. 5 (La.App. 5 Cir. 9/26/95), 662 So.2d 507, 509; Dean Classic Cars, L.L.C. v. Fidelity Bank and Trust Co., 07-0935 n. 9 (La.App. 1 Cir.12/21/07), 978 So.2d 393, 402, citing Babin v. Burnside Terminal, Greater Baton Rouge Port Com'n, 577 So.2d 90, 98 (La.App. 1 Cir. 1990); Delahoussaye v. Bd. of Sup'rs of Community and Technical Colleges, 04-0515, p. 13 (La.App. 1 Cir. 3/24/05), 906 So.2d 646, 654; Williams v. Enriquez, 40,305, p. 9 (La.App. 2 Cir. 11/17/05), 915 So.2d 434, 440; Taylor v. Bradner, 05-970, p. 8 (La.App. 5 Cir. 4/25/06), 928 So.2d 751, 755, citing Sanford v. Sanford, 468 So.2d 844, 845 (La.App. 1 Cir.1985) and Carner v. Carner, 97-0128, p. 5 (La.App. 3 Cir. 6/18/97), 698 So.2d 34, 36.[1]
We look imprudent, possibly foolish, holding to the contrary in this case.
Two provisions of the Louisiana Civil Code are applicable to the case before us. La. C.C. art. 2714 states:
If the leased thing is lost or totally destroyed, without the fault of either party, or if it is expropriated, the lease *246 terminates and neither party owes damages to the other.
La. C.C. art. 2715 states:
If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.
Although the trial judge thought that the premises were totally destroyed by Hurricane Katrina, which would support his decision, that conclusion cannot be correct based upon the facts in the record before us. Mr. Alphonso elected to renovate the existing structure and after the renovations reopen his business. Did Mr. Alphonso and his lessor enter into a new lease because they deemed the old premises to be completely destroyed? The record is devoid of a copy of any lease agreement so that a court can examine its terms. La. C.C. arts. 2714 and 2715 impact any conclusion that a court must reach.
For the foregoing reasons, I respectfully dissent in the majority's holding that the trial court did not dismiss Chalmette Amusement's case in its entirety. I respectfully dissent from the conclusion of the majority that any discussion that we might have regarding La. C.C. arts. 2714 and 2715 would be advisory in nature for the trial court found that the premises were de facto destroyed, which terminated the lease between Mr. Alphonso and his lessor. In all other respects, I concur with the majority's opinion.
NOTES
[1] Chalmette Amusement initially named Lucky Coin Machine Company ("Lucky Coin") as a defendant in addition to Mr. Alphonso, De Pope Tavern, and J & R Amusement but Lucky Coin was dismissed with prejudice as a defendant by order of April 23, 2007.
[2] Although the parties scratched out the numerical percentage amounts, writing and initialing the 30/70 split by hand, the remainder of the sentence was unaltered and, as such, is contradictory.
[3] See Denta-Max v. Maxicare Louisiana, Inc., 95-2128 (La.App. 4 Cir. 3/14//96), 671 So.2d 995, 996-998, (discussing the distinctions between mandatory and prohibitory injunctions and holding that a mandatory preliminary injunction may not be issued by a trial court unless the party seeking the injunction proves by a preponderance of the evidence at a full trial on the merits in which the taking of evidence is not limited that he is entitled to the injunction).
[4] A dismissal of the action in its entirety at this stage in the proceedings would be clear error.
[1] The foregoing listing is merely illustrative of the rule that applies in all Louisiana circuit courts of appeal. Well over a hundred cases have held similarly.