DANIEL L. DYSART, Judge.
I,At issue in this appeal is managerial control of Blaine Kern Artists, Inc., (hereinafter “BKA”), a company that has been designing and budding floats for Mardi Gras krewes since 1957. Blaine Kern, Sr. (hereinafter “Blaine”), appellant herein, is appealing the issuance of a preliminary injunction in which the trial court ordered that he not interfere with the management of BKA, that he attend a meeting of the shareholders of the company which was scheduled by the court, and that he and the other shareholders vote their shares of stock to accomplish the election of Blaine, Barry F. Kern (hereinafter “Barry”) and Frank Mumphrey as directors of the corporation. The injunction further ordered that immediately following the election of directors, Blaine and Barry vote as directors to elect Barry as president and Brian Kern as secretary/treasurer. The trial court required Barry to post a bond, and to amend his original petition to request a permanent injunction.
LA writ was taken by Blaine to this Court following the issuance of the preliminary injunction. This Court denied the writ. Following the denial of the writ, Blaine filed a timely notice of appeal, which was granted.
The facts surrounding the inception of this lawsuit are contested. The following facts have been ascertained from the record pleadings. Barry filed a petition on April 7, 2011, naming himself as petitioner and his father, Blaine, as defendant. He alleged that on October 1, 2010, he filed a lawsuit against his father for damages and equitable relief based upon the governing provisions of the articles of incorporation of BKA, the pertinent history of the governance of BKA, and recent disputes over expenditures and governance of BKA, instigated in part by Blaine’s wife.
More specifically, Barry alleged that on October 5, 2010, members of the administration of the Krewe of Bacchus contacted him to arrange a meeting to resolve the issues raised in Barrys first lawsuit. The Bacchus members and members of the krewes of Rex and Endymion met with Barry and Blaine. As a result of the meeting and discussions, two agreements were entered into between Barry and Blaine: 1) a seven-point letter of intent, and, 2) a four-point document entitled “Agreement.” The meetings were highly publicized by the local media.
The petition references the seven-point agreement between the parties, but it is not a part of the record before this Court. According to the petition, the seven-point agreement was a letter of intent in which the parties agreed, subject only “to mutual agreement of the final documentation thereof,” that Blaine would sell all of |shis shares of BKA to Barry. Barry, for cause and consideration enumerated in the agreement, would pay Blain’s, debts, would lease the property owned by Blaine, and *780 would award Blaine a lifetime consulting contract. Despite what Barry alleges to be Blaine’s willingness to consummate the agreement, no meeting has been held to complete the transfer of shares and control.
In addition to the seven-point agreement, a four-point agreement was signed by Blaine and Barry. This agreement, which has been made part of the record, set forth that Barry would assume control of BKA, that Blaine, Barry and Frank Mumphrey would be elected directors of BKA, that Barry would be elected president, and Brian Kern would be elected seeretary/treasurer. Additionally, the agreement provided that if either party violated the agreement, the party in violation would pay liquidated damages in the amount of $100,000.00, plus attorney’s fees and costs to the other party.
The petition alleged that no meeting was held to consummate the agreement and further, that Blaine had continued to interfere with the management of BKA. Particularly, Blaine negotiated an agreement with a customer that Barry believed to be detrimental to the operation of BKA, fired Brian Kern, demanded that he be issued checks by BKA to pay personal expenses, demanded cash from the register at BKA’s Mardi Gras world, and granted a security interest in certain BKA assets to New Beginnings Properties, LLC, a limited liability company wholly-owned by Blaine.
14Barry alleged that both October 5, 2010, agreements were breached by Blaine, and that Barry was entitled to specific performance, damages and all other legal and equitable relief. He prayed for same and additionally for injunctive relief, declaratory relief, and all other general and equitable relief.
On April 12, five days after the original petition was filed, Barry filed a Motion and Incorporated Memorandum for Temporary Restraining Order and Preliminary Injunction in the same proceeding. He asked that Blaine be restrained from interfering with the managerial control of BKA, which he alleged was granted to him in the four-point agreement, and from encumbering the assets of BKA. Barry alleged that the irreparable harm he would suffer if Blaine were not restrained from further action was the cancellation of Mardi Gras and the obliteration of the reputation of BKA. Further, Barry argued that he was likely to prevail on the merits because the terms of the four-point agreement were clear and it could be demonstrated that Blaine had violated those terms. Finally, Barry alleged that the “Greatest Free Show on Earth” must go on.
The order attached to the motion requesting a temporary restraining order was stamped “Denied” and “Moot” by the trial court. However, a hearing on whether Barry was entitled to a preliminary injunction was set for April 15, 2011. The order indicated that the matter “may” be heard upon affidavits.
On the day of hearing, Barry filed the affidavit of James Friedman, who had served as a certified public accountant for BKA from 1994 through 2005, and from 2008 to date. Barry also filed his own affidavit, to which he attached a copy of the |5four-point agreement, an agreement to lease and sell carnival floats between BKA and the Krewe of Alla executed by Blaine and representatives of the Krewe, and an apparent unilateral resolution of BKA’s board of directors signed by Blaine.
In response to the Motion for Preliminary Injunction, Blaine filed an opposition first objecting to the form of request for the injunction. Blaine argued that a request for injunction must be made by petition, not motion. Continuing, Blaine disputed that Barry would personally suffer *781 irreparable harm should the injunction not be granted. This failure to demonstrate irreparable harm is fatal to the request for an injunction. Blaine further argued that the entire agreement in dispute expired on March 9, 2011, making the request for injunction moot. Lastly, he argued that Barry would not be able to prevail on the merits.
Attached to the memorandum opposing the motion for injunction was the affidavit of Blaine in which he refutes all of the allegations made by Barry. He also declared that Barry mismanaged BKA to the extent that it could possibly face bankruptcy-
Following a hearing during which the trial court only heard argument of counsel, the trial court ruled from the bench. The trial court ordered that a shareholder’s meeting be scheduled not later than April 26, 2011, to allow for the management of BKA to be turned over to Barry. The court further stated that the matter would proceed to ordinary proceedings (presumably to issue a permanent injunction), and that Barry must post bond of $100,000 as security for the [ (¡preliminary injunction. The court ordered Barry to amend his original petition to request a permanent injunction within thirty days.
DISCUSSION:
The standard of review for a preliminary injunction is whether the trial court abused its discretion in ruling. Historic Restoration, Inc. v. RSUI Indemnity Co., 06-1178, p. 11 (La.App. 4 Cir. 8/21/07), 955 So.2d 200, 208.
However, this Court will not employ that standard, but rather will rule based on a procedural defect.
There exists a distinction between a mandatory and prohibitory injunction. Generally, the requirements to prevail on a hearing for a preliminary injunction are a showing that: 1) the injury, loss or damage mover will suffer if the injunction does not issue may be irreparable; 2) that he is entitled to the relief sought; and 3) that he is likely to prevail on the merits of the case. Denta-Max v. Maxicare Louisiana, Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, 996-97, citing Burnham Broadcasting Co. v. Williams, 629 So.2d 1335, 1338 (La.App. 4 Cir.1993).
In Denta-Max v. Maxicare Louisiana, Inc., supra, the judgment granting the preliminary injunction ordered that the defendant make payments under a contract that defendant was contesting as being void. The trial court reasoned that it was not ordering the defendant to act, but was rather prohibiting it from not making payments, i.e., maintaining the status quo. 671 So.2d at 996. This Court disagreed, stating “... by prohibiting Maxicare [defendant] from refusing to pay ^pending the outcome of the litigation does not change the fact that Maxicare has been ordered to take affirmative actions. In fact, the status quo is preserved by allowing Maxicare to retain its money until a court of law has determined whether the contract is valid.” Id.
In I.F. v. Administrators of the Tulane Education Fund, 11-0308 (La.App. 4 Cir. 8/24/11), 72 So.3d 462, this Court explained:
..., since the jurisprudence has established that a mandatory injunction has the same basic effect as a permanent injunction, it may not issue on merely a prima facie showing that the party seeking the injunction can prove the necessary elements. Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.
11-0308, p. 5, 72 So.3d at 465, citing Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270, pp. 6-7 *782 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664.
In the case before us, no evidentia-ry hearing was held; rather, the parties attached affidavits to their motions/memo-randa and presented argument at the hearing.
At oral argument, counsel for Barry argued that the request for a preliminary injunction was not to force Blaine to act, but was to maintain the status quo. Therefore, no evidentiary hearing was necessary. We disagree.
Just as in the Dmta-Max case, cited herein, Blaine was ordered to act. The trial court ordered that a director’s meeting be held on April 26, 2011, and that the parties vote their shares of stock to elect directors, and thereafter convene a board |8of directors meeting to elect Barry as president and Brian Kern as secretary/treasurer of BKA.
Accordingly, we hold that the preliminary injunction issued herein was mandatory and that the trial court erred in ruling without the benefit of a full evidentiary hearing. The judgment is therefore reversed, and this matter is hereby remanded for an evidentiary hearing on Barry’s request for a mandatory injunction.
REVERSED AND REMANDED