SANDRA CABRINA JENKINS, Judge.
h Mid-South Plumbing, LLC (“Mid-South”) appeals the trial court’s judgment overruling Mid-South’s exceptions of no right of action and no cause of action, and granting the petition for preliminary injunction filed by the mortgagee, First Bank and Trust (“First Bank”). For the reasons assigned, the judgment of the trial court is affirmed and this matter is remanded to the trial court for further pro *735 ceedings consistent with this Court’s opinion.
FACTUAL AND PROCEDURAL BACKGROUND
In January and February of 2002, Mid-South was hired to do plumbing repair work at the Magnolia Garden Apartments located at 6001 Dowman Road in New Orleans. After the work was completed, Mid-South sent invoices to the apartment’s management company totaling $35,177.50. Because it was only paid $10,000.00 of the amount owed, on June 12, 2002, Mid-South filed a Statement of Claim and/or Privilege (“Lien”) for the balance in the Office of the Recorder of Mortgages and Notarial Archives for the Parish of Orleans. The Lien identified the property as the Magnolia Garden Apartments, but did not name the owner of the property.
|2On January 29, 2003, Mid-South filed a lawsuit in Orleans Parish to recover the outstanding balance of $25,907.50, along with interest and attorney fees. Mid-South also sought recognition and maintenance of a privilege against the property based upon the Lien. The sole defendant named in the petition was The Development Consortium-Shelly Arms, LLC (“Shelly”), a prior owner of the property with no interest in it at the time that the work was performed by Mid-South. In connection with the petition, Mid-South also filed a Notice of Lis Pendens in the Orleans Parish mortgage records which also misidentified the owner of the property as Shelly. On March 13, 2003, Mid-South filed an amended petition substituting the correct owner, Cobalt, LLC (“Colby”), as the proper defendant in the place of Shelly. Mid-South failed, however, to amend the Lien and the Notice of Lis Pendens to name Cobalt as the owner of the property in the mortgage records and notarial archives.
Thereafter, in September of 2004, the owner, Cobalt, obtained a mortgage of the property through First Bank to secure a loan of $2,500,000.00. Due to Mid-South’s filing error, at the time that the mortgage was executed and recorded, the public records- did not reflect the existence of a claim by Mid-South against any property owned by Cobalt. As a result, the title attorney handling the loan was unable to locate the Lien or the Notice of Lis Pendens and consequently entered into a contract that did not take into consideration either document.
In 2009, nearly five years after First Bank granted a mortgage on the property, Mid-South filed a Motion for Summary Judgment against Cobalt. In doing so, Mid-South erroneously represented to the trial court that its Lien included “the identity of the person for whom the contract was performed.” [¡¡The trial court granted Mid-South’s motion on September 11, 2009.[1] The judgment awarded Mid-South the monetary damages it requested; “recognized and maintained” the Lien filed by Mid-South as valid; and directed the Sheriff to “execute such Lien against the immovable property identified in and made subject of the Lien and sell such immovable property at a judicial sale in full satisfaction” of the judgment.
Thereafter, a writ of fien facias issued. The property was seized by the Sheriff and scheduled for public auction on August 16, 2012. First Bank received a Mennonite notice[2] and in response, filed a Petition *736 for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against Mid-South arguing that the Lien was unenforceable as facially invalid due to Mid-South’s failure to identify Cobalt as the owner of the Property in the public records as mandated by law. Mid-South, in turn, filed exceptions of no right of action, no cause of action, and a reconven-tional demand seeking damages for costs incurred in attempting to execute the writ of fieri facias.[3] The trial court ultimately overruled the exceptions and granted the preliminary injunction on September 20, 2012. It is from this judgment that Mid-South now appeals.
^DISCUSSION
Exceptions of No Right of Action and No Cause of Action
By its first assignment of error, Mid-South argues that First Bank could not establish a right or cause of action because Louisiana Code of Civil Procedure Articles 1092, 2298, and 2643 expressly require a party to have an alleged ownership interest in property in order to have standing to enjoin a foreclosure sale. It argues that the Bank should have instead intervened to assert its alleged right to share in the proceeds from the sale.
Peremptory exceptions of no right of action are reviewed de novo because they involve questions of law. Turner v. Law Firm of Wolff & Wolff, 07-1589, p. 2 (La.App. 4 Cir. 6/4/08), 986 So.2d 889, 891. When reviewing the lower court’s ruling on an exception of no right of action, we must focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, and in doing so, we assume that the petition states a cause of action for that plaintiff. Lions Gate Films, Inc. v. Jonesfilm, 12-1452, p. 4 (La.App. 4 Cir. 3/27/13) 113 So.3d 366, 369; Hood v. Cotter, 08-0215, p. 17 (La.12/2/08), 5 So.3d 819, 829.
Peremptory exceptions of no cause of action are also subject to de novo review; not only do they involve questions of law, but the trial court’s decision is based solely on the sufficiency of the petition. Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349. The function of the exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Fink, 01-0987, p. 3, 801 So.2d at 348. Therefore no evidence may be introduced in support of the exception and the well-pleaded facts [fin the petition must be accepted as true. Fink, 01-0987, p. 4, 801 So.2d at 349. “Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.” Id.
Mid-South claims that a plain language reading of Articles 1092, 2298, and 2643 supports the conclusion that third persons claiming a mortgage interest in seized property may only intervene to share in the distribution of sale proceeds and to contest ranking. According to Mid-South, the seizure and sale were valid because the trial court’s September 11, 2009 judgment recognized and maintained the Lien as valid and this judgment was neither appealed nor declared to be null. Mid-South claims that as a result, First *737 Bank had no standing to challenge the sale. We disagree. There is nothing in the Code of Civil Procedure that expressly prevents a mortgage-holder from seeking injunctive relief to stop the sale of unlawfully seized property, regardless of whether there is a previously undisputed judgment recognizing the alleged validity of the underlying lien.
Article 1092 begins by providing that “[a] third party claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention.” (Emphasis added). The use of the word, “may” indicates that the assertion of third-party rights to seized property via intervention is permissive, rather than mandatory. La. R.S. 1:3 (“The word shall’ is mandatory and the word may’ is permissive”). The Article goes on to address the time frame within which third parties claiming specific rights to the property may intervene. According to Article 1092, if the third party is asserting an ownership interest in the property, the party may intervene at any time prior to the sale, “and the court | fimay grant him injunctive relief to prevent such sale before an adjudication of his claim of ownership.” La. C.C.P. art. 1092. If, on the other hand, the third party is claiming a mortgage or privilege on the property, the party may intervene at any time prior to the distribution of proceeds from the sale “and the court shall order the sheriff to hold such proceeds subject to its further orders.” La. C.C.P. art. 1092.
Of significance, Article 1092 does not directly address the rights of third parties contesting the validity of the sale itself. Rather, the article provides that “[a]n in-tervener claiming the proceeds of a judicial sale does not thereby admit judicially the validity, nor is he estopped from asserting the invalidity, of the claim of the seizing creditor.” La. C.C.P. art. 1092. In addition, the Article does not prescribe a particular means by which one contesting the validity of a judicial sale must do so. As a result, we find that there is nothing in Article 1092 that prevents a third party claiming a mortgage or privilege on the property from contesting the validity of a sale prior to the sale, and such rights do not have to be asserted via intervention.
The second codal article that Mid-South relies on to contest First Bank’s intervention is Article 2298, which relates to the injunction of Sheriffs sales. It provides that judgment debtors and third persons claiming ownership of property seized under a writ of fieri facias are entitled to injunctive relief prohibiting the sheriff from proceeding with the sale of property in four situations, including “[wjhen the sheriff is proceeding with the execution contrary to law” and “[wjhen the judgment sought to be executed is absolutely null.” La. C.C.P. art. 2298(1) and (4). While this article plainly addresses the rights of judgment debtors and |7purported owners, we find it significant that it does not state that these are the only parties entitled to in-junctive relief; therefore Mid-South’s argument that this article precludes others from seeking injunctive relief lacks merit.
The third article cited by Mid-South is Article 2643. It addresses the rights of third parties claiming a mortgage, security interest, or privilege on seized property, and states in pertinent part, “[a] third person claiming a mortgage, security interest, or privilege on the property seized in an executory proceeding may assert his right to share in the distribution of the proceeds of the sale of the property by intervention, as provided in Article 1092.” This article coincides with Article 1092, and also fails to address the situation where a third party is not merely attempting to assert its right to sale proceeds, but *738 is instead contesting the validity of the sale itself.
The Louisiana Supreme Court examined the right of a third party to enjoin a judicial sale in Shaw v. Hingle, 94-1579 (La.1/17/95) 648 So.2d 903. In Shaw, a creditor filed a revocatory action against a judgment debtor and his brother, alleging that the debtor’s brother had procured a fraudulent mortgage on the property solely for the purpose of obtaining a preference over the property in a judicial sale.[4] Shaw, 648 So.2d at 904. Because the brother filed a petition for executory process while the revocatory action was still pending, the creditor filed a petition for injunction, alleging that he would be irreparably harmed by the sale and seizure. Id. The trial court granted a temporary restraining order and the brother intervened to file an exception of no right of action. After a hearing, the trial court sustained the brother’s exception, dissolved the temporary restraining border, and denied the creditor’s request for a preliminary injunction. This ruling was affirmed by the court of appeal.
At issue before the Supreme Court was whether a “strict reading” of the Code of Civil Procedure[5] “leads to the conclusion that a third party ... who asserts no ownership interest is precluded from enjoining [a] sheriffs sale and is limited to a claim against the proceeds.” Shaw, 648 So.2d at 904-05. The Court held that Code of Civil Procedure did not mandate this conclusion. Instead, the Court found it significant that the creditor was contesting the validity of the seizure, rather simply contesting ranking. It explained:
[Ajpplying such an interpretation to this case would ignore a fundamental distinction, namely, that [the creditor] is not attempting to enjoin the sale of property in order to enforce rights which arise from the executory proceedings; rather he is attempting by means of the injunction to preserve the status quo pending a resolution of his revocatory action.”
Shaw, 648 So.2d at 905. The Court further explained that if the creditor was “ultimately successful on his revocatory action, his remedy would be to have the mortgages annulled, thus making the exec-utory proceeding moot.” Id. As a result, Supreme Court held that under the facts of that case, the Code of Civil Procedure did not operate to bar the creditor’s right to an injunction. It therefore remanded the case back to the trial court for a determination of whether the creditor was entitled to injunctive relief under Louisiana Code of Civil Procedure Article 3601. Id.
|flBased on our reading of Articles 1092, 2298, and 2643, and the Supreme Court’s ruling in Shaw, we do not find that the trial court erred in overruling Mid-South’s exceptions of no right or action and no cause of action. Because First Bank is contesting the validity of the sale itself, rather than simply its ranking, its rights were not limited to those that could be asserted through a timely filed intervention.
*739 Preliminary Injunction
We must now determine whether or not the trial court erred in granting First Bank’s petition for a preliminary injunction under La. C.C.P. art. 3601.
The preliminary injunction is an interlocutory device designed to preserve the existing status pending a trial of the issues on the merits of the case. Chalmette Amusement Co., Inc. v. Alphonso, 07-1512, p. 7 (La.App. 4 Cir. 4/16/08), 983 So.2d 239. It may be granted based merely on a prima facie showing by the petitioner that he is entitled to relief. Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220, p. 9 (La.4/14/04), 875 So.2d 22, 29. This standard of proof is less than that required for a permanent injunction. Yokum v. Pat O’Brien’s Bar, Inc., 12-0217, p. 7 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80. “[T]he requirements to prevail on a hearing for a preliminary injunction are a showing that: 1) the injury, loss or damage mover will suffer if the injunction does not issue may be irreparable; 2) that he is entitled to the relief sought; and 3) that he is likely to prevail on the merits of the case.” Kern v. Kern, 11-0915, p. 6 (La.App. 4 Cir. 2/29/12), 85 So.3d 778, 781. Irreparable injury means the applicant cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards. HCNO Servs., Inc. v. Secure Computing Sys., Inc., 96-1753, 96-1693 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 842.
“The standard of review for a preliminary injunction is whether the trial court abused its discretion in ruling.” Kern, 11-0915, p. 6, 85 So.3d at 781. “That broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.” Yokum, 12-0217, p. 7, 99 So.3d at 80. The trial judge has great discretion to grant or deny the relief requested at a hearing on a preliminary injunction. Desire Narcotics Rehab. Ctr., Inc. v. State Dep’t of Health and Hospitals, 07-0390, p. 4 (La.App. 4 Cir. 10/17/07), 970 So.2d 17, 20. An abuse of discretion results from a conclusion reached in an arbitrary or capricious manner. Wise v. Bossier Parish Sch. Bd., 02-1525, p. 6 (La.6/27/03), 851 So.2d 1090, 1094. An arbitrary conclusion is one resulting from a disregard of the evidence or its proper weight; a capricious conclusion is one is not supported by substantial evidence or that is contrary to substantiated competent evidence. Id.
A review of the evidence submitted in this case reveals that neither the Lien nor the Notice of Lis Pendens identified Cobalt as the owner of the Magnolia Garden Apartments property. As a result, when First Bank accepted a mortgage on the property from Cobalt as security for a multi-million dollar loan, it had no statutorily required notice of any adverse claim being asserted by Mid-South against the property. In addition, although Mid-South amended its petition to identify Cobalt as the proper owner of the property, the Lien and Notice attached to the petition as evidence still failed to identify Cobalt as the owner. Therefore, on Lithe face of the proceedings, the trial court judgment recognizing the Lien as valid was erroneous.
It is a long standing principle of statutory interpretation that statutes creating liens and privileges are stricti juris and their provisions are to be strictly construed against the parties in whose favor the liens are created. State Through Div. of Admin. v. McInnis Bros. Const., 97-0742, p. 9 (La.10/21/97), 701 So.2d 937, 944. By the same token, the statutes which give liens and privileges “priority *740 over certain conventional obligations, such as those established by recorded mortgages, are stricti juris, and failure to meet every requirement of the statute renders the purported lien invalid.” National Surety Corp. v. Colquitt, 246 So.2d 890, 893 (La.App. 2d Cir.1971) (citing National Bank of Commerce in New Orleans v. Justice, 212 So.2d 711 (La.App. 4th Cir.1968).)
Louisiana Revised Statute 9:4822(G) lists the information that must be included in a statement of claim or privilege and states that it must “reasonably identity” the owner of the affected immovable property. “If liens are to be strictly construed, it is obvious that there must be set forth information [indicating] against whom it is to be asserted.” Hughes v. Will, 35 So.2d 241, 245 (La.App.Orleans 1948) (cited in La. R.S. Ann. 9:4822, cmt. (g) 1981). Accordingly, a lien is subject to cancellation if it fails to satisfy the express requirements of this statute. See Bradley Elec. Serv., Inc. v. 2601, L.L.C., 11-0627 (La.App. 4 Cir. 12/14/11), 82 So.3d 1242; Tee It Up Golf, Inc. v. Bayou State Constr., L.L.C., 09-855, pp. 3-5 (La. App 3 Cir. 2/10/10), 30 So.3d 1159, 1161-62.
Based on the foregoing, we do not find that the trial court abused’ its discretion in granting a preliminary injunction in favor of First Bank. Although |1PMid-South argues that First Bank could not satisfy the requirement of showing irreparable harm because its damages could be measured in monetary terms, we find that the trial court was not clearly wrong in rejecting this argument. While it appears that First Bank’s damages are in fact quantifiable, injunctive relief may still be proper where monetary judgment is expected to be valueless due to the insolvency of the judgment debtor, or for other reasons such as evidence that the judgment would not likely be paid. Oestreicher v. Hackett, 94-2573 (La.App. 4 Cir. 5/16/95), 660 So.2d 29, 31. See also, Franz v. Cormier, 579 So.2d 1201, 1203 (La.App. 5th Cir.1991) (preliminary injunction preventing the withdrawal of money market certificate was proper where evidence showed that the defendant lacked sufficient funds, apart from the certificate, to respond to a monetary judgment); Ciambotti v. Decatur-St. Louis, Lupin, Property Ventures, 533 So.2d 1352, 1358-59 (La.App. 3rd Cir.1988) (temporary restraining order against funding or payment of letter of credit was warranted where evidence showed that defendant partnership would not have been able to pay a claim for damages). In addition, our courts have long held that it is not necessary to allege or prove irreparable injury in a petition for writ of injunction when injunctive relief is sought on the grounds that the party to be enjoined is pursuing a course of action reprobated by law. Miller v. Knorr, 553 So.2d 1043, 1045 (La.App. 4th Cir.1989); Whalen v. Brinkmann, 258 So.2d 145, 147 (La.App. 1st Cir.1972); see also Phillips’ Bar & Restaurant, Inc. v. City of New Orleans, 12-1396, p. 23 (La.App. 4 Cir. 4/24/13), 116 So.3d 92, 107.
CONCLUSION
[ isFor the reasons discussed, the district court’s judgment overruling Mid-South’s exceptions of no right or action and no cause of action, and granting First Bank’s petition for preliminary injunction is affirmed. This matter is remanded to the trial court for further proceedings consistent with this opinion. The trial court is further ordered to conduct a hearing and rule on the Mid-South’s reconventional demand.
AFFIRMED AND REMANDED.

. The defendant. Cobalt, was unrepresented and did not appear at the hearing on the motion for summary judgment.

. See Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

. In support of its reconventional demand, Mid-South argued that First Bank had actual notice of Mid-South's judgment against the property prior to receiving Mennonite notice of the sale, and therefore could have taken action to prevent the sale and seizure before Mid-South incurred additional expenses in seeking to enforce the judgment.

. The revocatory action was filed pursuant to La. C.C. art. 1977.

. The Court specifically examined La. C.C.P. arts 1092 and 2751. Article 2751, entitled, “Grounds for arresting seizure and sale; damages,” states:
The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed.