STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-292


CHRISTOPHER BRADFORD AND RONEE BOYER

VERSUS

WALKER AUTOMOTIVE, ET AL.



**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260032
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.




**AFFIRMED.**

**Bonita K. Preuett-Armour**
**Armour Law Firm**
**P. O. Box 8386**
**Alexandria, LA 71306**
**(318) 442-6611**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**State Farm Mutual AutomobileInsurance Company**

**Lottie L. Bash**
**Faircloth, Melton, Sobel & Bash, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Walker Automotive**
**James Boyd**

**Christopher D. Meyer**
**Burr & Forman**
**190 E. Capitol St., Ste. M-100**
**Jackson, MS 39201**
**(601) 355-5150**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Exeter Finance, LLC**

**Christopher Bradford**
**Ronee Boyer**
**In Proper Person**
**139 Mac's Road**
**Hessmer, LA 71341**
**(318) 264-2644**

**EZELL, Judge.**

Christopher Bradford appeals the decision of the trial court below granting an involuntary dismissal against him in favor of Walker Automotive and James Boyd. For the following reasons, we hereby affirm the decision of the trial court.

This suit arises from the purchase of a 2012 Dodge Journey (SUV) by Mr. Bradford and Ronee Boyer from Walker Automotive. Mr. Boyd was the salesman who sold the Plaintiffs the vehicle, which was sold "as is" on October 4, 2016. All paperwork finalizing the sale, including financing and Walker's agreement to fix minor existing issues with the vehicle, was completed at that time and signed by the Plaintiffs. Work was done to the bumper and a "check engine" light was fixed, as per the sales agreement. The Plaintiffs took the vehicle with no further complaints around October 12, 2016.

At the trial court below, Mr. Bradford alleges pro se, through several amended petitions, that Mr. Boyd either damaged the vehicle after the sale was finalized or withheld information regarding its condition prior to the sale. He further alleges that Walker performed work on the vehicle without authorization. At trial, after the conclusion of the Plaintiffs' evidence, Walker and Boyd moved for an involuntary dismissal, which was granted by the trial court. From that decision, Mr. Bradford appeals.[1]

Mr. Bradford has not set forth any true assignments of error on appeal. However, "a *pro se* litigant may be afforded some leeway or patience in the form of liberally construed pleading[.]" *Manichia v. Mahoney*, 10-87, p. 8 (La.App. 4 Cir. 8/4/10), 45 So.3d 618, 622, *writ denied*, 10-2259 (La. 11/24/10), 50 So.3d 829.

---

[1] Ronee Boyer did not file a brief before this court, and her appeal was dismissed by order of this court on July 8, 2019.

Accordingly, we will deal with Mr. Bradford's claims as best as we can determine them to be.

Mr. Bradford complains in his brief that Plaintiffs did not receive a jury trial and requests that this matter be sent back to be heard by a jury. However, La.Code Civ.P. art. 1732 states in part: "A trial by jury shall not be available in . . . [a] suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs[.]" Plaintiffs both agreed in a stipulation filed on February 7, 2019, that their damages did not exceed $50,000.00. "A stipulation has the effect of binding all parties and the court." *Harris v. West Carroll Parish Sch. Bd.*, 605 So.2d 610, 613 (La.App. 2 Cir.), *writ denied*, 609 So.2d 255 (La.1992). Furthermore, in that stipulation, Plaintiffs stated that they understood that by making that agreement, they would not be entitled to a jury trial, but instead would have their case heard by the trial court judge below. The Plaintiffs clearly agreed to a judge trial and are not entitled to a trial by jury. There is no error in the manner in which this case was heard.

Next, Mr. Bradford mentions Exeter Finance, LLC in his brief, quickly and in passing, though he does not challenge the company's dismissal via its exception of no cause of action. For the sake of thoroughness, we will briefly address Exeter's dismissal.

An exception of no cause of action asks whether the law extends a remedy to anyone under the factual allegations made in the petition. *Mid–South Plumbing, LLC v. Dev. Consortium-Shelly Arms, L.L.C.,* 12-1731 (La.App. 4 Cir. 10/23/13), 126 So.3d 732. The exception is triable on the face of the petition and each well-pleaded fact included within must be accepted as true. *Id.* No evidence may be

2

introduced to support or refute an exception of no cause of action. La.Code Civ. Proc. art. 931.

Appellate courts conduct a de novo review of a trial court's ruling granting an exception of no cause of action, as the exception presents questions of law. *St. Pierre v. Northrop Grumman Shipbuilding, Inc.*, 12-545 (La.App. 4 Cir. 10/24/12), 102 So.3d 1003. Therefore, our review entails deciding whether the trial court's ruling granting the exception was legally correct. *Id.*

Plaintiffs' claims center around damage allegedly done to their vehicle by Mr. Boyd after their purchase was finalized and/or that they were misled into purchasing a damaged vehicle. Exeter's only role in this matter was as assignee of the sales contract, a role that began after the alleged problems with Walker and Mr. Boyd. Mr. Bradford does not claim in his petitions that Exeter had any interactions with him or Walker during the purchase of the vehicle, or that Exeter knew of any issues with the vehicle prior to purchase. Mr. Bradford does not claim that Exeter damaged the SUV, misled him, or acted inappropriately in its role as assignee of the sales contract. Simply put, Mr. Bradford does not state any claims which would entitle him to relief against Exeter. Accordingly, the trial court's granting of Exeter's exception of no cause of action was correct.

Finally, we address Mr. Bradford's claims against Walker and Mr. Boyd.

"To avoid an involuntary dismissal of his action, the plaintiff must establish his claim by a preponderance of the evidence." *Smith v. Warren*, 18-453, p. 4 (La.App. 5 Cir. 8/6/18), 253 So.3d 260, 263. In *Fontenot v. Safeway Ins. Co. of Louisiana.*, 17-780, pp. 3-4 (La.App. 3 Cir. 6/13/18), 249 So.3d 900, 902-03, *writ denied*, 18-1223 (La. 10/29/18), 254 So.3d 1214 (citations omitted), this court stated:

3

A motion for involuntary dismissal is the proper procedural vehicle in cases where the action is not tried before a jury. The procedure governing motions for involuntary dismissal is found in La.Code Civ.P. art. 1672(B), which provides as follows:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Pursuant to Article 1672, the trial court must consider and weigh the Plaintiffs' evidence and dismiss the matter if it determines they have not met their burden of proof. The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable.

"In considering whether the plaintiff has met this burden, the trial court is not required to review the evidence presented in the light most favorable to the plaintiff." *Smith*, 253 So.3d at 263.

Mr. Bradford first seemingly asserts that James Boyd, the salesman who sold him the SUV, withheld information from him concerning the state of the vehicle prior to the sale. Mr. Bradford assumes, with no proof, that because minor problems arose with the vehicle after purchase that undisclosed problems must have existed prior. There is nothing in the record which shows this to be true. In fact, the record shows that any problems that existed at the time the sale was completed were fixed by Walker prior to Mr. Bradford taking possession of the

SUV. One prior minor accident had been disclosed in a CARFAX document prior to the sale.

Furthermore, the vehicle was sold as is, so Walker was not responsible for any subsequent problems beyond what it had agreed to repair at the time of the sale. The record does not show that these initial problems ever arose again. Rather, the record shows that the problems Mr. Bradford complained of were minor and that Walker's responsibility to repair, such as rattles, hissing noises, condensation from the air conditioner, squeaky belts, and even nails in tires. Nevertheless, Walker repeatedly performed minor repairs and inspections to insure there was not a greater problem with the SUV at no charge to Mr. Bradford.

Several times throughout the record, Mr. Bradford references technical descriptions of repairs as being additional, unauthorized work performed when he brought the SUV in to have some problem addressed. Mr. Bradford seemingly confuses the diagnoses for problems he wanted addressed as work performed without his consent. Again, the record supports no such claim. For example, when the vehicle was purchased, Walker agreed to find out why a "check engine" light was on and fix the underlying cause. The problem turned out to be a cam shaft position sensor and connector, which were replaced. However, even though Mr. Bradford himself noticed the check engine light and required it be fixed as a condition of the sale, he acted as if the repair was done without his consent when he saw the documents describing what repair had taken place.

On another occasion, Mr. Bradford brought the vehicle in for an oil leak. This was covered under the drivetrain warranty and repaired as such. At trial, Mr. Bradford asked Walker's service manager why he wasn't given information as to why the repair was undertaken, when he had clearly brought it in seeking the exact

repair performed. Mr. Bradford does not allege, let alone prove, that any requested repair was not undertaken or that repairs were incorrectly completed. Walker is not negligent or liable for correctly performing requested repairs, and Mr. Bradford has proven no damages arising from any repairs completed by Walker.

Mr. Bradford also seems to take his vehicle being worked on at more than one Walker property as proof of some nefarious scheme. Again, the record shows otherwise. The SUV was initially serviced and inspected at the lot it was purchased from, had minor body work involving bumper clips performed at a body shop prior to delivery, and subsequent mechanical inspections done at the Walker Dodge facility, because it was a Dodge vehicle. Nothing in those actions implies any negligence on Walker's part or any damage done to Mr. Bradford. Nor has Mr. Bradford offered proof of any actual damages arising out of the vehicle being serviced at different Walker locations. Similarly, Mr. Bradford is concerned with whether Mr. Boyd dropped off the SUV to be serviced at various points. Again, even if Mr. Boyd *had* moved the vehicle on more occasions than Mr. Bradford was aware of, there is no proof that would have harmed Mr. Bradford in any way.

Likewise, Mr. Bradford claims that since his wife's name was on some service documents, his on others, and Walker's service number on yet others, this is proof of some problem. However, Mr. Bradford, again, never states how he was actually damaged by internal Walker documents alternating between owners of the vehicle being listed on service invoices. By the same token, separate Walker repair facilities creating new or additional internal invoices or orders for one repair does not imply, let alone prove, any harm to Mr. Bradford. Also, the lack of Mr. Bradford's signature on internal documents transferring the SUV between Walker facilities similarly is no proof of harm to him.

Next, Mr. Bradford seemingly seeks to hold Mr. Boyd and/or Walker liable for not canceling his loan after he became dissatisfied with the SUV. Mr. Bradford seems to be under the impression that Walker issued his loan, rather than acting as an intermediary to the financial institution who actually loaned them the money for the vehicle, Exeter. This is an incorrect assessment of the situation. The financing documents clearly and unequivocally name Exeter as assignee of the loan and were signed by Mr. Bradford on the date of the sale. After the sale was completed, Mr. Boyd and Walker had no involvement with the actual loan whatsoever. The loan on the vehicle was the property of Exeter, who was the institution who purchased the loan secured by the SUV and paid Walker for the vehicle at the time of sale. Walker and Boyd had absolutely no power to cancel or "disregard" that loan after Mr. Bradford agreed to it. Mr. Boyd correctly told Mr. Bradford that any issues he had with the loan had to be taken up with the holder of that loan. Neither Walker nor Mr. Boyd could be held liable for anything having to do with the loan not being cancelled by a third-party loan holder several months after the completed sale.

Finally, we note for the sake of thoroughness, the record contains no evidence whatsoever that Mr. Boyd damaged the SUV in any way, either prior to or after the sale was completed. In fact, there is no evidence of any accident involving the vehicle after its purchase from Walker at all.

Simply put, after a thorough review of the record, Mr. Bradford has not shown that he is entitled to any relief in this matter, as he has failed to show he has suffered any damages whatsoever to him or his vehicle at the hands of Mr. Boyd or Walker. The trial court did not commit manifest error in granting the motion for involuntary dismissal.

For the above reasons, the decision of the trial court below is affirmed. Costs of this appeal are hereby assessed against Mr. Bradford.

**AFFIRMED.**